**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **INFORMATION SYSTEMS & NETWORKS CORPORATION** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 06-99C** |
| **THE UNITED STATES OF AMERICA** | ) | **(Judge Block)** |
| **Defendant.** | ) | |

**PLAINTIFF'S MOTION *IN LIMINE* TO ESTABLISH AS ADMITTED ALL COSTS INCURRED BY PLAINTIFF AS SET FORTH IN DEFENDANT'S AUDIT REPORTS AND FINAL DECISION**

Plaintiff, Information Systems & Networks Corporation ("Plaintiff" or "ISN"), by its undersigned attorneys, hereby moves this Honorable Court *in limine* pursuant to Rules 301, 402 and 403 of the Federal Rules of Evidence to establish as admitted as a conclusive, irrebuttable presumption that ISN has proven the indirect costs which are claimed and as set forth in both the audit reports of the Defense Contract Audit Agency ("DCAA"), and the Final Decision of the Administrative Contracting Officer ("ACO") dated February 9, 2005 ("the Final Decision"). ISN must still prove the allowability of such costs in obtaining its damages. ISN is entitled to this ruling as a result of the binding evidentiary admissions of the United States ("defendant" or the "Government"). In her deposition, Ellen E. Erdelsky, Auditor for the DCAA, confirmed that the Audit Reports for all years in which indirect costs are being claimed by ISN state that the indirect costs were incurred by ISN. The Final Decision also sets forth the amounts claimed and does not dispute that the costs were incurred.

Defendant has therefore conceded, as a result of its audits, the ACO Final Decision and the testimony at deposition, that all indirect costs claimed by ISN were actually incurred by ISN. [1]

ISN is entitled to the presumption of the accuracy of every portion of the Audit Reports and the Final Decision that is against the Government's interest, and should not be required to present evidence establishing any indirect cost. The DCAA has examined all of the relevant evidence in coming to this conclusion, and is the agency in the Government charged with auditing, inter alia, incurred indirect costs. ISN should not be required to prove costs which have been verified by the DCAA, and the Government should not be permitted to introduce evidence to contradict its admissions or to now question costs it previously verified. Such evidence is unnecessary, would cause undue delay and would cause confusion in resolving those aspects of ISN's claim for which there remains a material dispute. The material disputes to be resolved at trial primarily regard the allowability of certain of ISN's indirect costs. The parties should not prolong and complicate the trial by proving or disputing damages already analyzed and verified by the government's own audits.

## STATEMENT OF RELEVANT FACTS

ISN has appealed the final decision of the Administrative Contracting Officer ("ACO") dated February 9, 2005 ("the Final Decision") concerning the disallowance of certain claimed costs in various indirect cost pools for its fiscal years 1987 though 1995. A copy of the Final Decision is attached as Exhibit A. Prior to the issuance of the Final Decision, the DCAA had issued six (6) Audit Reports covering its audit of ISN's incurred costs for those nine years (9). Each of these Audit Reports disallows certain indirect

[1] There are certain indirect costs set forth in the Audit Reports and Final Decision which ISN believes are understated. Therefore, the requested admissions would be a floor on which ISN could prove additional incurred costs on top of what has been admitted.

costs because of allowability of the costs-not because DCAA concluded they were not incurred. These Audit Reports are as follows:

Audit Report 6221-92B16990.003/6221-95F10250.401, dated 31 October, 1994, Audit of Incurred Costs for Fiscal Year Ended 30 September 1987.

Audit Report 6221-94L16990.001/6221-95F10250.402, dated 14 April 1995, Audit of Incurred Costs for Fiscal Year Ended 30 September 1988.

Audit Report 6221-94L16990.002/6221-95F10250.403, dated 20 July 1995, Audit of Incurred Costs for Fiscal Year Ended 30 September 1989.

Audit Report 6221-94L16990.003/6221-95F10250.404, dated 18 July 1995, Audit of Incurred Costs for Fiscal Year Ended 30 September 1990.

Audit Report 6221-94L16990.004/6221-95F10250.405, dated 3 January 1996, Audit of Incurred Costs for Fiscal Year Ended 30 September 1991.

Audit Report 6221-1997F10250.364 (Revised), dated 3 July 2001, Audit of Incurred Costs for Fiscal Years Ended 30 September 1992, 1993, 1994, and 1995.

The Audit Reports disallowed certain indirect costs. The Final Decision re-affirms, formally, the disallowances. The fact that these indirect costs were incurred is admitted and binding on the defendant.

As set forth in the Final Decision, ISN incurred the following costs for each of the designated categories:

1. Cost of Ownership:

| Fiscal Year | Rental Cost |
|---|---|
| 1987 | $ 990,505 |
| 1988 | $1,298,478 |
| 1989 | $1,107,337 |
| 1990 | $1,307,841 |
| 1991 | $1,348,157 |
| 1992 | $1,449,695 |
| 1993 | $ 943,153 |
| 1994 | $1,050,198 |
| 1995 | $1,088,207 |

2. Cost of Bonuses:

| Fiscal Year | Bonus Cost |
|---|---|
| 1992 | $ 330,344 |
| 1994 | $ 205,363 |
| 1995 | $ 186,500 |

3. Cost of Pension:

| Fiscal Year | Costs |
|---|---|
| 1992 | $ 285,495 |
| 1993 | $ 294,535 |
| 1994 | $ 298,921 |
| 1995 | $ 456,228 |

4. Cost of Ownership-Equipment:

| Fiscal Year | Rental Cost |
|---|---|
| 1987 | $ 101,346 |
| 1988 | $ 94,000 |
| 1989 | $ 161,200 |
| 1990 | $ 62,200 |
| 1991 | $ 45,400 |

5. Corporate Cost Allocations:

| Fiscal Year | Total Overhead Cost |
|---|---|
| 1988 | $ 768,734 |
| 1989 | $ 833,714 |
| 1990 | $ 928,922 |
| 1991 | $ 833,144 |
| 1992 | $ 406,606 |
| 1993 | $ 653,022 |
| 1994 | $ 838,013 |
| 1995 | $ 581,694 |

6. Multiple Small Items:

| Fiscal Year | Costs |
|---|---|
| 1988 | $ 33,458 |
| 1992 | $ 15,015 |
| 1993 | $ 957 |
| 1994 | $ 4,257 |

## LEGAL ARGUMENT

The admissions in the Audit Reports, the Final Decision and Erdelsky's accompanying testimony, constitute "evidentiary admissions." An evidentiary admission is a statement made by a party's agent which the trier of fact may evaluate as it deems fit. See Weyerhaeuser Co. and Subsidiaries v. United States, 32 Fed.Cl.180, 118 (1994).

The trier of fact shall ascribe whatever evidentiary weight that is appropriate for the evidentiary admission. Id. (citing Budden v. United States, 748 F. Supp.1374 (D. Neb. 1990), *vacated on other grounds*, 963 F.2d 188 (8th Cir. 1991).

In this instance, this Court is the trier of fact. In narrowing the issues for trial, this Court should give substantial weight to the admissions made by the Government after it had audited the indirect costs which constitute ISN's claim. The DCAA "has the primary responsibility for providing accounting and financial advice on Department of Defense contracts governed by Defense Acquisition Regulations, 32 C.F.R. § 357.2(a)." Marquardt Co. v. United States, 822 F.2d 1573 (Fed. Cir. 1987); see also, F.A.R. § 42.101(b) ("the [DCAA] is the responsible Government audit agency" regarding audits). Federal courts have observed, "[T]he auditors of the DCAA are highly expert in their field and have special knowledge which no other personnel in any of the other agencies of the [Department of Defense] possess..." See United States v. Westinghouse Elec. Corp., 615 F. Supp. 1163, 1191 (W.D. Pa. 1985). The Government relies heavily upon the DCAA's expertise in auditing claims from Government contractors.

As a result of the admissions made by the Government through the agency that specializes in analyzing the proof of indirect costs, the Court should proceed with the legal presumption that ISN has proven the costs incurred and which are now quantified for allowability. A presumption has been defined as "a rule of law, statutory or judicial, by which finding of a basic fact gives rise to [the] existence of [a] presumed fact, until [the] presumption is rebutted." Black's Law Dictionary 1185 (6th ed. 1990). Although not evidence, a presumption can be a "substitute" for evidence if it is not rebutted. Dunn v. Simmons, 877 F.2d 1275, 1278 (6th Cir. 1989), cert. den., 494 U.S. 1061 (1990). "[P]resumptions, whether created by statute or by judicial ruling, 'arise out of

considerations of fairness, public policy and probability." See A.C. Aukerman Co. v. R.L. Chaides Contr. Co., 960 F.2d 1020, 1034 (Fed. Cir. 1992) (citing Cornetta v. United States, 851 F.2d 1372, 1380 (Fed. Cir. 1988); see also, Panduit Corp. v. All States Plastic Mfg. Co., 744 F.2d 1564, 1581 (Fed. Cir. 1984).

Conclusive, or "irrebutable" presumptions are binding, while presumptions which are rebuttable are nonbinding. See Universal Restoration, Inc. v. United States, 798 F.2d 1400, 1406 (Fed. Cir 1986). "A conclusive presumption is one in which proof of [a] basic fact renders the existence of the presumed fact conclusive and irrebuttable." Black's Law Dictionary 1186. In this instance, if the Court applies an irrebuttable presumption to the accuracy of the Government's admissions in the Audit Reports and the Final Decision then the Government would not be permitted to offer evidence rebutting its own Reports and Final Decision and ISN would not have to present evidence other than the Final Decision itself to prove any of the questioned incurred costs.[2] Any other result would moot the purpose and the effect of the Audit Reports. Thus, if the Court determines that ISN is entitled to only a rebuttable presumption as to the proof of the costs incurred and verified in the Audit Reports, then not only could the Government offer evidence to refute the contents of the Audit Reports, but Rule 301 of the Federal Rules of Evidence, which applies to rebuttable presumptions, would still require ISN to prove the costs. [3]

---

[2] Rule 301 states:

In all civil actions and proceedings not otherwise provided for by Act of Congress or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

[3] Since the Final Decision is based on the Audit Reports, even the necessity for introducing the Audit Report into evidence is doubtful.

This Court should determine that ISN is entitled to a conclusive, irrebuttable presumption that the Government's admissions as to the indirect costs incurred are accurate and binding. Any finding by the DCAA that is adverse to the Government must still be reliable. It is not at all likely that the DCAA would err against the interests of the Government. This Court should therefore presume that the indirect costs claimed by ISN in the Audit Reports were properly verified and incurred.

The United States Court of Claims has previously held that the United States is estopped from protesting the findings of one of its own audits of a claim by offering a subsequent audit of the same claim containing a different calculation as to the determination of costs. See Elastic Stop Nut Corp. v. United States, 132 F. Supp. 466, 468 (Ct. Cl. 1955). The Elastic case dealt with multiple contracts between the Government and a contractor, and the attempt by the Government to contradict its previous audit of the contractor's claim that the parties had relied on in settling a previous claim. Id. The Government's rationale for questioning the previous audit in that case was to reallocate costs from a different claim to the claim that had already settled, thereby reducing the amount available as damages in the subsequent suit. Id. The Court held that even "[i]f, at this stage of the proceedings, there were unanimity of opinion among expert accountants that the [latter] audit was more scientifically accurate, it would not affect our conclusion in this case." Id. The Court noted that the "Government made its [initial] audit," and the Court rejected the Government's attempt to revise the results of that audit because "[i]t is too late to do that, merely for the purpose of preserving the niceties of scientific accounting." Id.

The application of a conclusive presumption would allow the Court to save time and move more quickly to the issues concerning the allowability of the indirect costs

incurred. The Federal Circuit has held that the Court should reject litigation positions which waste resources and time or needlessly encumber the dispute resolution process." See Anderson Consulting v. United States, 959 F.2d 929, 932 (Fed. Cir. 1992). In addition, any evidence offered by the Government rebutting its previous admissions would be irrelevant, and therefore inadmissible under Rule 402 of the Federal Rules of Evidence. To the extent that evidence regarding the indirect costs not questioned in the Audit Reports could be considered relevant, its "probative value is substantially outweighed" by "considerations of undue delay, waste of time, or needless presentation of cumulative evidence" – and therefore must be excluded pursuant to Rule 403 of the Federal Rules of Evidence.

Even if this Court determines that ISN is entitled to only a rebuttable presumption arising from the Government's admissions in the Audit Reports and the Final Decision, ISN should not be required to present evidence of the verified costs from the Audit Reports and the Final Decision. Forcing ISN to produce the raw data underlying the admissions in the Audit Reports and Final Decision would only prolong the trial of this matter unnecessarily, and would not serve any public purpose. The Government has already examined all of this evidence since 1993. If the Court decides that the Government may have the opportunity to revisit its findings, ISN should not be required to reproduce documents and testimony that substantiate the Government's admissions. The trial should proceed with the admissions that ISN has satisfactorily proven the indirect costs verified in the Audit Reports and the Final Decision by virtue of the Government's admissions therein.

**CONCLUSION**

For the foregoing reasons, Plaintiff, Information Systems and Networks Corporation, respectfully requests this Court to establish as admitted all costs incurred by ISN and verified in the Audit Reports and the Final Decision.

Dated: May 8 , 2008

Respectfully submitted,

SINGER & ASSOCIATES, P.C.

By: [signature]

NORMAN H. SINGER, Esq.
Singer & Associates, P.C.
10411 Motor City Drive
Suite 725
Bethesda, MD 20817
Telephone: (240) 395-2343
Facsimile: (301) 469-0403

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing "PLAINTIFF'S MOTION *IN LIMINE* TO ESTABLISH AS ADMITTED ALL COSTS INCURRED BY PLAINTIFF AS SET FORTH IN DEFENDANT'S AUDIT REPORTS AND FINAL DECISION" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

May 8, 2008

Norman H. Singer, Esquire

EXHIBIT A

DEFENSE CONTRACT MANAGEMENT AGENCY
DEFENSE CONTRACT MANAGEMENT AGENCY MARYLAND
217 EAST REDWOOD STREET, SUITE 1800
BALTIMORE, MARYLAND 21202-5299

DCMAE-GTOK

February 9, 2005

Norman H. Singer, Esq.
Singer & Associates
10411 Motor City Drive, Suite 725
Bethesda, MD 28017

SUBJECT: Final Decision in Response to the Fifth of Seven Claims Asserted by ISN in its Certified Claim dated December 14, 2004

Dear Mr. Singer::

On December 21, 2004, I received a certified claim from you on behalf of ISN dated December 14, 2004. In the claim letter, ISN asserts seven specific claims. This is my final decision on the fifth claim. Insofar as the remaining six claims are under my cognizance, I will issue a final decision on those claims no later than May 13, 2005.

The fifth claim requests resolution of five issues, 'cost of ownership, cost of bonuses, cost of pension, cost of ownership-equipment rental, and corporate and B&P cost allocation'. Based upon the resolution of these issues, ISN requests "final rate approvals" for Fiscal Years 1985-1996.

I am unable to establish final G&A rates for FY 1985-1995 until litigation of the state income tax element of the rates has been concluded by the Department of Justice.

The G&A rate for 1996 was established by means of a DCAA rate letter dated October 17, 2001, which ISN accepted on September 3, 2002.

With the exception of G&A rates, all indirect cost rates for ISN's Fiscal Years 1985 and 1986 were settled by means of an Indirect Cost Rate Agreement signed by ISN on January 29, 1998 and by its Administrative Contracting Officer (ACO) on March 3, 1998.

In this final decision, I will determine all final rates other than G&A, and establish interim G&A rates that may be used by ISN for interim billings pending the conclusion of the state income tax litigation.

**DEFENSE CONTRACT MANAGEMENT AGENCY**
**DEFENSE CONTRACT MANAGEMENT AGENCY MARYLAND**
**217 EAST REDWOOD STREET, SUITE 1800**
**BALTIMORE, MARYLAND 21202-5299**

I make the following findings concerning the disputed cost issues affecting ISN's indirect cost rates for Fiscal Years 1987-1995:

**1. Cost of Ownership- Building:** I find that DCAA developed a reasonable method to determine the cost of ownership of the space rented by the contractor from an organization under common control, and properly compared that amount to the cost of the lease.

Applying the cost of ownership calculation to each of the years in question yields the following allowable costs:

| Fiscal Year | Rental Cost | Ownership Cost | Costs Allowed |
|---|---|---|---|
| 1987 | $990,505 | $1,245,958 | $990,505 |
| 1988 | $1,298,478 | $1,036,102 | $1,036,102 |
| 1989 | $1,107,337 | $1,061,947 | $1,061,947 |
| 1990 | $1,307,841 | $1,262,053 | $1,262,053 |
| 1991 | $1,348,157 | $1,152,383 | $1,152,383 |
| 1992 | $1,449,695 | $1,020,550 | $1,020,550 |
| 1993 | $943,153 | $954,744 | $943,153 |
| 1994 | $1,050,198 | $865,997 | $865,997 |
| 1995 | $1,083,207 | $879,754 | $879,754 |

**2. Cost of Bonuses:** DCAA questioned the costs of bonuses included by ISN in its final indirect cost proposals for FYs 1992, 1994 and 1995 because the auditors were unable to match the accrued costs with payments made. Subsequent to the audit and DCAA's issuance of Forms 1, ISN provided information supporting the payment of these costs. Therefore, I allow the bonus costs previously questioned by DCAA:

| Fiscal Year | Costs Claimed | Costs Allowed |
|---|---|---|
| 1992 | $330,344 | $330,344 |
| 1994 | $205,363 | $205,363 |
| 1995 | $186,500 | $186,500 |

**3. Cost of Pensions:** DCAA questioned certain pension plan payment costs included by ISN in its incurred cost proposals for fiscal years 1992, 1993, 1994 and 1995 because ISN did not make payments 'by the time set for filing of the Federal income tax return or any extension' as required by FAR 31.205-6(j)(1)(i).

**DEFENSE CONTRACT MANAGEMENT AGENCY**
**DEFENSE CONTRACT MANAGEMENT AGENCY MARYLAND**
**217 EAST REDWOOD STREET, SUITE 1800**
**BALTIMORE, MARYLAND 21202-5299**

**Fiscal Year 1992**: ISN made pension contributions in October 1993, and no tax filing extension was obtained. Therefore, I disallow these costs under FAR 31.205-6(j).

**Fiscal Year 1993:** ISN received a tax filing extension through October 1, 1994 and made its pension contributions in September 1994. Therefore, I conclude that ISN complied with FAR 31.205-6(j) for this year, and allow the costs.

**Fiscal Year 1994**: ISN received a tax filing extension through October 1, 1995 and made its pension contributions in September 1995. Therefore, I conclude that ISN complied with FAR 31.205-6(j) for this year, and allow the costs.

**Fiscal Year 1995**: ISN has provided no evidence that it made its pension contributions within the time set for filing its Federal income tax return – September 30, 1996 – or any extension thereof. Therefore, I disallow these costs.

| Fiscal Year | Costs Claimed | Costs Allowed |
|---|---|---|
| 1992 | $285,495 | $0 |
| 1993 | $294,535 | $294,535 |
| 1994 | $298,921 | $298,921 |
| 1995 | $456,228 | $0 |

**4. Cost of Ownership- Equipment Rental**: DCAA questioned costs incurred by ISN in Fiscal Years 1988-1991 for the rental of certain IT equipment used to run the ISN corporate accounting system. The equipment was rented from Shel Nar, a leasing firm wholly owned and operated by the sole owner of ISN. The relevant cost principle is FAR 31.205-36, Rental Costs, which states that charges in the nature of rent for property between any organizations under common control are only allowable to the extent that they do not exceed the normal costs of ownership. The only exception to this limitation applies when the entity leasing to the contractor has an established practice of leasing the same or similar property to unaffiliated lessees.

I find that ISN and Shel Nar are organizations under common control. I further find that during the years FY 1988-1991, Shel Nar did not have an established practice of leasing the same or similar property to unaffiliated lessees.

ISN has failed to provide sufficient information to permit me to determine the cost of ownership for this equipment. Based on information that was provided, I have determined that a profit rate of 'at least 35%' was customary for Shel Nar. Using

DEFENSE CONTRACT MANAGEMENT AGENCY
DEFENSE CONTRACT MANAGEMENT AGENCY MARYLAND
217 EAST REDWOOD STREET, SUITE 1800
BALTIMORE, MARYLAND 21202-5299

this figure, I hereby disallow 35% of the lease costs paid by ISN to Shel Nar, and allow 65% of the costs:

| Fiscal Year | Costs Claimed | Costs Allowed |
|---|---|---|
| 1987 | $101,346 | $65,875 |
| 1988 | $94,000 | $61,100 |
| 1989 | $161,200 | $104,780 |
| 1990 | $62,200 | $40,430 |
| 1991 | $45,400 | $29,510 |

**5. B&P and Corporate Cost Allocation:**

**B&P Allocation:**
For Fiscal Years 1988-1991, a previous ACO approved ISN's practice of allocating B&P expenses using its overhead base rather than its G&A base. Commencing in FY 1992, ISN returned to the practice of allocating its B&P expenses using its G&A base. In light of the previous ACO's approval of the earlier practice, I will not question it. Furthermore, I consider the subsequent practice of allocating B&P expenses by means of the G&A base to be appropriate. Therefore, I accept ISN's allocation of B&P costs for FY 1988-1995.

**Corporate Cost Allocation:**
Beginning with FY 1988, ISN proposed to group a portion of G&A expenses into an intermediate pool, and allocate these pooled expenses to its various overhead pools. The DCAA auditors concluded that this accounting method violated FAR 31.203, Indirect Costs. However, a previous ACO approved this method for FY 1988-1991. I agree with the DCAA auditors. Although I will allow this accounting method to be used for FY 1988-1991 in light of the prior approval of the ACO, I have reallocated these costs to ISN's G&A pool for Fiscal Years 1992-1995:

| Fiscal Year | Total Overheads | General & Admin |
|---|---|---|
| 1988 | $768,734 | |
| 1989 | $833,714 | |
| 1990 | $928,922 | |
| 1991 | $833,144 | |
| 1992 | | $406,606 |
| 1993 | | $653,022 |
| 1994 | | $838,013 |
| 1995 | | $581,694 |

DEFENSE CONTRACT MANAGEMENT AGENCY
DEFENSE CONTRACT MANAGEMENT AGENCY MARYLAND
217 EAST REDWOOD STREET, SUITE 1800
BALTIMORE, MARYLAND 21202-5299

**Multiple Small Items:** Various miscellaneous costs included in ISN's incurred cost proposals for FY 1988 and FYs 1992-1994 were disapproved by DCAA in Forms 1 issued to ISN on April 24, 2000 and June 19, 2001. Although ISN has never disputed these disapprovals, I will address these costs in order to avoid any confusion over their allowability:

**FY 1988 - Notice No. 88-5:** DCAA disapproved $33,458 in costs. I agree with the auditors, and hereby disallow these costs.

**FY 1992 - Notice No. 2000-13 (revised):** DCAA disapproved $15,015 in costs. I agree with the auditors, and hereby disallow these costs.

**FY 1993 – Notice No. 2000-14 (revised):** DCAA disapproved $957 in costs. I agree with the auditors, and hereby disallow these costs.

**FY 1994 – Notice No. 2000-15 (revised):** DCAA disapproved $4,257 in costs. I agree with the auditors, and hereby disallow these costs.

**Final Fringe and Overhead Rates:**

Based upon the disallowances discussed above, I hereby determine the final fringe and overhead rates for Fiscal Years 1987-1995:

**Fringe Benefits & Overhead Rates**

| Rate Names | 1987 | 1988 | 1989 | 1990 | 1991 | 1992 | 1993 | 1994 | 1995 |
|---|---|---|---|---|---|---|---|---|---|
| **Fringe** | **34.00%** | **33.13%** | **30.31%** | **27.67%** | **30.29%** | **29.17%** | **27.51%** | **25.84%** | **24.51%** |
| Proposed | 33.50% | 33.54% | 30.55% | 27.93% | 29.01% | 31.04% | 27.37% | 28.18% | 29.80% |
| **Overheads Washington A** | **45.80%** | **58.74%** | **87.97%** | **63.38%** | **57.92%** | **28.66%** | **32.60%** | **34.86%** | **34.57%** |
| Proposed | 46.20% | 61.71% | 84.88% | 63.37% | 68.49% | 35.71% | 35.07% | 36.82% | 42.18% |
| **Washington B** | **36.70%** | **38.28%** | **60.20%** | **41.28%** | **36.67%** | **17.36%** | **24.21%** | **22.79%** | **26.21%** |
| Proposed | 36.80% | 41.70% | 60.64% | 49.53% | 50.56% | 22.70% | 29.12% | 28.25% | 25.96% |
| **Washington D** | | **38.28%** | **60.20%** | **41.28%** | **36.67%** | | | | |
| Proposed | | 41.70% | 59.42% | 49.53% | 50.56% | | | | |
| **N. Carolina A** | **44.40%** | **60.15%** | **59.73%** | **56.77%** | **49.08%** | **26.55%** | **42.65%** | **27.15%** | **27.38%** |
| Proposed | 46.00% | 60.72% | 59.81% | 58.3% | 62.33% | 30.54% | 48.94% | 55.20% | 57.89% |

**DEFENSE CONTRACT MANAGEMENT AGENCY**
**DEFENSE CONTRACT MANAGEMENT AGENCY MARYLAND**
**217 EAST REDWOOD STREET, SUITE 1800**
**BALTIMORE, MARYLAND 21202-5299**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **N. Carolina B** | | | | | **39.53%** | **21.64%** | **37.92%** | **23.46%** | |
| Proposed | | | | | 37.38% | 25.93% | 44.40% | 47.20% | |
| **Alabama** | | **20.12%** | **51.37%** | | | | | | |
| Proposed | | 20.21% | 0.00% | | | | | | |
| **ISN Services** | | **17.82%** | **24.53%** | **22.47%** | **20.46%** | **15.54%** | **10.62%** | **15.79%** | |
| Proposed | | 11.35% | 17.82% | 15.76% | 16.23% | 20.07% | 15.63% | 21.24% | |
| **Newport A** | | **111.51%** | **70.03%** | **64.23%** | **52.50%** | **36.42%** | | | |
| Proposed | | 112.00% | 102.27% | 72.48% | 59.97% | 40.26% | | | |
| **Newport B** | | **53.00%** | **51.97%** | **55.47%** | **43.62%** | **28.59%** | | | |
| Proposed | | 53.56% | 47.63% | 53.67% | 51.00% | 32.41% | | | |
| **San Antonio A** | | | | **63.47%** | | | **25.88%** | | |
| Proposed | | | | 64.45% | | | 31.28% | | |
| **FAA** | | | | | | | **9.40%** | **4.17%** | **2.09%** |
| Proposed | | | | | | | 14.75% | 13.92% | 5.37% |
| **Boston A** | **50.20%** | | | | | | | | |
| Proposed | 50.30% | | | | | | | | |
| **NASA TUNS** | **20.00%** | 20.00% Proposed | | | | | | | |

**Note:**

Overhead names with a letter A or without any letter indicate a contractor site. Overhead names with the letters B or D indicate a client site.

These rates are applicable to all Government flexibly prices contracts and subcontracts for Fiscal Years 1987-1995.

This determination of indirect rates does not change any cost or rate ceiling, or any specific allowance or disallowance established by the terms and conditions of any contracts to which these rates apply. This determination does not constitute an obligation of funds. Recovery of costs pursuant to this determination shall be subject to the Limitation of Cost, Limitation of Funds, and Limitation of Government Liability clauses contained in the individual contracts to which this determination applies. In the event that the terms of this rate

DEFENSE CONTRACT MANAGEMENT AGENCY
DEFENSE CONTRACT MANAGEMENT AGENCY MARYLAND
217 EAST REDWOOD STREET, SUITE 1800
BALTIMORE, MARYLAND 21202-5299

determination conflict with the terms of any Government contracts to which this determination applies, the terms of the contracts shall take precedence.

Based upon the disallowances discussed above, I hereby establish revised interim G&A rates for Fiscal Years 1985-1995. This interim rate does not include the state income tax costs that are currently the subject of litigation.

**General & Administrative Rates Summary**

| Rate Name | 1987 | 1988 | 1989 | 1990 | 1991 | 1992 | 1993 | 1994 | 1995 |
|---|---|---|---|---|---|---|---|---|---|
| **G&A** | 16.82% | 9.28% | 8.78% | 9.47% | 8.95% | 13.65% | 19.27% | 12.83% | 10.65% |

This is the final decision of the Contracting Officer. You may appeal the decision to the Armed Services Board of Contract Appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the Armed Services Board of Contract Appeals and provide a copy to the Administrative Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the Armed Services Board of Contract Appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

JOHN H. SVENSSON
Administrative Contracting Officer

cc: File/GTOK
DCAA Silver Spring Branch Office, Germantown, MD
DCMAE-GTG