IN THE UNITED STATES COURT OF FEDERAL CLAIMS

INFORMATION SYSTEMS & NETWORKS CORPORATION

Plaintiff,

v.

THE UNITED STATES,

Defendant.

No. 06-99C
(Judge Block)

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION IN LIMINE TO ESTABLISH AS ADMITTED ALL COSTS AS SET FORTH IN DEFENDANT'S AUDIT REPORTS AND FINAL DECISION**

Plaintiff, Information Systems and Networks Corporation ("plaintiff" or "ISN"), by its undersigned attorneys, hereby files its Reply to defendant's Response ("the Response") to plaintiff's Motion In Limine to Establish as Admitted All Cost Incurred by plaintiff As Set Forth in defendant's Audit Reports and Final Decision ("the Motion").

**INTRODUCTION**

Defendant makes three fundamental errors in its Response. First, defendant intentionally misconstrues the Motion by claiming that its intention is to establish defendant's liability for the disallowed costs. That is not the point of the Motion. The Motion only claims admissions about the amounts of the disallowances. The

Motion claims that to establish the incurred indirect costs which have led to the disallowances which are the subject of this case, ISN can rely on the findings of the administrative contracting officer ("ACO"). Contrary to that position, these findings, defendant claims, cannot constitute admissions because the ACO Final Decision is inadmissible. Defendant claims that because this is a Contract Disputes Act ("CDA") action, it is a de novo proceeding. Therefore, any findings or conclusions of the ACO are barred. As will be shown, defendant's intentional distortion of what the Motion seeks renders its argument frivolous and its reliance on Wilner v. United States, 24 F.3d 1397, (Fed. Cir. 1994) mis-placed.

Second, defendant claims that the audit reports issued by Defense Contracting Audit Agency ("DCAA") covering the period 1987-1995 should have been submitted with the Motion. Because they were not, the Court cannot determine whether the incurred costs (which provide the basis of the disallowed costs set forth in the Final Decision) are admissions by the defendant. In effect, the defendant disavows the amounts in the Final Decision, but provides no basis factually that the numbers are wrong. Defendant believes that submitting over 700-pages of audit reports

would somehow assist the Court in determining the Motion, despite the fact that the admitted costs are already in the Final Decision and have been verified by the DCAA. Defendant knows full well its obligations to admit those facts that cannot be controverted in good faith and has failed to do act accordingly. The Response has not been filed in good faith.

Third, defendant mistakenly argues that the DCAA auditor, Ellen E. Erdelsky, who prepared virtually all of the audit reports covering the ISN Incurred Cost Submissions over the nine year period, as well as the Final Decision of the ACO incorporating those conclusions, has not admitted the amount of specific incurred costs. This disingenuous argument fails to take into account the testimony of the ACO who said he relied on the figures prepared by DCAA (and Erdelsky) in rendering the Final Decision.[1]

## ARGUMENT

### A. The Findings of the ACO in the Final Decision Based Upon the DCAA Audit Reports Constitute Admissions

Defendant argues that findings of fact in a contracting officer's final decision are not binding upon

[1] Defendant would be estopped, at the very least, in contesting or contradicting its own numbers solely on the grounds that it has the right to do so because it is a trial de novo.

the parties and are not entitled to any deference, citing Wilner v. United States, 24 F.3d 1397 (Fed. Cir. 1994). Wilner is not applicable to the Motion and does not stand for the proposition stated.

At issue in this case are certain disallowances made by the ACO (based upon the findings of the DCAA auditor). These disallowances were predicated on indirect costs set forth by ISN in its Incurred Cost Submissions for each of the years 1987-1995. Each of those Incurred Cost Submissions were audited by DCAA under applicable audit guidelines. As part of the audit process, DCAA confirmed whether an ISN cost had been incurred. DCAA then went on to determine whether that cost should be allowed or disallowed in part or in whole. Certain disallowances, as determined by DCAA, were then incorporated in the ACO Final Decision.

The ACO has testified that he relied on the DCAA figures and did not do his own calculations. (See deposition excerpts of ACO John Svennson attached). He further testified that he made no independent calculations from those proposed by DCAA (See attached). This of course makes logical sense because DCAA is the agency charged with performing audits and confirming costs.

Defendant argues that because this is a de novo proceeding, none of the findings by either the DCAA or the ACO can be admissions because the findings are not admissible. In effect, defendant claims that neither party is bound by either its Incurred Cost Submissions or the DCAA audit reports auditing those Submissions, in the trial of this case. The defendant further argues, that it now has the right to make additional disallowances over and above what the ACO disallowed in his Final Decision and is not bound by the Final Decision. The basis of such an astonishing claim is the improper reliance on the Wilner case.

Wilner stands for the rule that a final decision cannot establish liability against the government. Wilner was a compensable delay case regarding a contractor's construction of a training facility for the United States Navy. The completion date of the project was delayed 447 calendar days. In reviewing the contractor's claim, the contracting officer issued a final decision based on technical reports (not the DCAA) finding that the contractor was entitled to 260 calendar days of compensable delay. The contractor, dissatisfied with this award, brought an action in this court under the CDA. The

contractor claimed it was entitled to the entire 447 day delay period. At trial, the contractor did not provide any critical path analysis for determining whether any of the delay activities were on the critical path of the project. Thus, the court concluded it had not proven its case or in other words, had not established the governments' liability for delay.

At the trial, the government called the contracting officer as a witness and introduced into evidence his final decision. Based on this evidence, the court found that the delay set forth in the Final Decision established liability and took precedence over the contractor's lack of proof. The Federal Circuit overruled the court in its utilization of the final decision.

Wilner can be distinguished from the Motion in the following respects:

First, ISN is not using the Final Decision as support for its entitlement to the disallowances. All it is arguing is that the defendant be bound by the amount of those disallowances which are clearly admissible under Wilner. Second, in Wilner, the contracting officer did not do any independent analysis of the amount of compensable delay but rather based his final decision on technical

reports. Thus, since the contracting officer had no personal knowledge of the underlying facts, he could not provide any testimony regarding the underlying facts. Here, the ACO relied on audited figures from the DCAA, the agency with the responsibility to provide accurate numbers. ISN claims in the Motion that such figures used by the ACO are the best basis that the defendant could ask for: A DCAA audit. Importantly, even given the lack of predicate for the contracting office's conclusion in Wilner, the Federal Circuit went on to hold that a contracting officer was competent to offer testimony and that his final decision was admissible and relevant in trial.

Finally, unlike in Wilner, the ACO's Final Decision here incorporates certain costs which were audited by the DCAA and provided to the ACO by the DCAA and which provides the basis of the disallowances. No argument can be made that the Final Decision itself is being utilized as the basis for imposing liability on the defendant. In fact, the whole purpose of the de novo trial is for ISN to prove and to demonstrate that the disallowances were improper (and the defendant prove they were proper). Further, the ISN costs utilized by DCAA and provided the ACO, were submitted by ISN in its Incurred Cost Submissions and ISN is prohibited under the FAR to modify such submissions.

Thus, unless the disallowances are going to be made out of whole cloth and change, there must be some point at which the defendant is bound by its prior conduct.

**B. The Failure To Provide The Court The Audit Reports Is Irrelevant**

Arguably, in an effort to have this Court review each of seven 150+page audit reports prepared by DCAA, defendant claims that the failure to provide such audit reports somehow means that the numbers used in the Final Decision were not accurate. Again, defendant is impugning its own threshold document. First, neither the DCAA who provided the numbers, the ACO who utilized the numbers, or ISN dispute the costs that are set forth in the Final Decision as having been incurred and disallowed. The same parties do not dispute the quantum of the disallowances - only the entitlement of ISN to the disallowances. Thus, regardless of whether this is a de novo proceeding or not, the introduction of the audit reports would prove nothing to this Court.

As ISN has previously expressed, this is not a complex case. The disallowances fall into well-defined categories and the amounts of those disallowances have not been nor can be disputed by the defendant. No one has claimed that

this trial will not be a de novo proceeding as to ISN's entitlement to those disallowances. But to take the position that neither the audit reports, the disallowances provided by DCAA, and the numbers utilized by the ACO as set forth in the Final Decision are not admissions simply does not address the purpose of admissions in a legal proceeding.

**C. Both The DCAA Auditor and ACO Have Confirmed ISN's Indirect Costs and Disallowances[2]**

All of the numbers utilized by the ACO in his Final Decision were reviewed by the same DCAA auditor that did the actual audit of ISN's indirect costs. If somehow those numbers were incorrect, then not only would the DCAA auditor have picked up the inaccuracies, but the DCAA auditor would not have provided inaccurate numbers to the ACO. This case is defined by the parameters of the Final Decision. Neither party has the right to engage in re-calculations of indirect costs incurred and the resulting, disallowances.

[2] At no time has any government witness claimed that the calculations in the Final Decision are wrong in any respect.

**CONCLUSION**

For the reasons set forth herein, plaintiff respectfully requests that the Motion In Limine be granted.

Date: June 9, 2008

Respectfully submitted,

SINGER & ASSOCIATES

By: /s/Norman H. Singer

NORMAN H. SINGER, ESQUIRE
Singer & Associates, P.C.
10411 Motor City Drive
Suite 725
Bethesda, MD 20817
Telephone: (240) 395-2343
Facsimile: (301) 469-0403
Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of this Plaintiff's Reply To Defendant's Response To Plaintiff's Motion In Limine To Establish As Admitted All Cost Incurred By Plaintiff As Set Forth In Defendant's Audit Reports And Final Decision was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s/Norman H. Singer
NORMAN H. SINGER, ESQ

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

INFORMATION SYSTEMS &
NETWORKS CORPORATION
PLAINTIFF,

ORIGINAL

V. Case No. 06-99C
(Judge Block)

THE UNITED STATES,
DEFENDANT. /

Bethesda, Maryland
February 28, 2008

Deposition of JOHN SVENSSON, a witness herein, called for examination by counsel for the Plaintiff in the above-entitled matter, pursuant to notice, the witness being duly sworn by KATHY SAVICH, a Notary Public in and for the State of Maryland, taken at the the Law Offices of Singer & Associates, ISN Building, 10411 Motor City Drive, Bethesda, Maryland, at 10:02 a.m.,

February 28, 2008, and the proceedings being taken down by Stenotype by KATHY SAVICH, RPR, and transcribed under her direction.

APPEARANCES:

On Behalf of the Plaintiff:

Norman H. Singer, Esquire
Singer & Associates
ISN Building 10411 Motor City Drive
Bethesda, Maryland 20814
(301) 469-0400

On behalf of the Defendants:

Gregory T. Allen, Esquire
DCMA
Contract Disputes Resolution Center
10500 Battleview Parkway, Suite 105
Manassas, Virginia 20109
(703) 530-3170
gregory.allen@dcma.mil

and

(Continued)

Timothy P. McIlmail, Esquire
Department of Justice
Commercial Litigation Branch
Civil Division
Attention: Classified Unit
8th Floor
1100 L Street, Northwest
Washington, D.C. 20530

(Svensson Exhibit No. 4 was marked for identification.)

BY MR. SINGER:

**Q. Svensson Number 4 has been identified by Ms. Erdelsky as a document prepared by her on or about January 26, 2005.**

**Have you seen that before?**

A. I believe I have.

**Q. Do you understand what it purports to represent?**

A. Well, it's labeled the Questioned Cost by Year, so I think that's what she was trying to represent there.

**Q. Okay. Do you recall using this document in your negotiations with ISN?**

A. I'm not so sure I would have used this document. This looks like Ms. Erdelsky was just recapping perhaps where things were at certain times.

**Q. Okay. Did you ever discuss the document with her?**

A. I can't say that I discussed this

particular document with her. She may have provided it to me as a recap of amounts.

Q. **Did you have anything to do with calculating the amounts on this document?**

A. No, I did not.

Q. **All those calculations, to your knowledge, were done by Ms. Erdelsky?**

A. To my knowledge, they would have been, yes.

Q. **Did you ever do, at any time, your own calculations without assistance from anybody else regarding the ISN issue of building cost of ownership?**

A. I am sure I probably wrote something down on paper just comparing figures. That would probably have been the extent of it.

Q. **And when you say, "just comparing figures," would those have been figures that you yourself generated?**

A. Not that I derived, no.

Q. **So is it correct to say that you**

**never derived any figures regarding the ISN issue of building cost of ownership?**
A. I would say that's true.
**Q. And is the answer also correct regarding the pension issue?**
A. That's true.
**Q. And is the answer also the same regarding equipment cost of ownership?**
A. That's true.
**Q. And with respect to the allocation issues and placement, did you ever yourself do any work on those issues?**
A. No, I did not.
**Q. And the same question with respect to bid and proposal regarding placement, did you ever do any work on that issue yourself?**
A. No, I did not.
(Svensson Exhibit No. 5 was marked for identification.)
BY MR. SINGER:
**Q. Have you completed your review of the exhibit?**

A. Yes. Thank you.

**Q. Svensson 5 is an email from Ellen Erdelsky to you dated August 17, 2004; is that correct?**

A. That's correct.

**Q. Do you have any independent recollection of this email?**

A. Not really.

**Q. Okay.**

A. It appears that I was asking for a grand total of amounts owed from one party to the other under a certain circumstance or...

**Q. Okay. In the first paragraph, you said: What follows addresses your request on "who owes who how much," is the quotation, "who owes who how much."**

**That's Ellen quoting you, I take it?**

A. I believe so.

**Q. In the third paragraph, Ms. Erdelsky is asking you what rates she is to use; is that correct?**

A. The third or the fourth?

**Q. I'm sorry. The fourth.**

A. Yes, I see your question now.

**Q. And she says that, "At this point in time the only rates I can recommend are those that I prepared for you last fall which I call the unilateral rates."**

**Did you, independently of DCAA, ever calculate any indirect rate for ISN?**

A. Not that I can recall.

**Q. Is it correct to say that you relied solely on DCAA to recommend and provide indirect rates for ISN?**

MR. McILMAIL: Objection, leading.

THE WITNESS: Yes.

BY MR. SINGER:

**Q. And specifically at or about the time of this email, August 17, 2004, the person who provided those recommendations, to your knowledge, was Ms. Erdelsky?**

A. Yes.

**Q. This fourth paragraph indicates**

DEPOSITION EXHIBIT
Svensson 4
2-28-08 KS

Information Syster. letworks Corporation

**Questioned Cost By Year**

| Issue | 1987 | 1988 | 1989 | 1990 | 1991 | 1992 | 1993 | 1994 | 1995 | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| Building Cost of Ownership | 0 | 262,376 | 45,390 | 45,788 | 195,774 | 429,145 | 0 | 184,201 | 203,450 | 1,366,124 |
| Bonuses | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Pension | 0 | 0 | 0 | 0 | 0 | 285,495 | 0 | 0 | 456,228 | 741,723 |
| Equipment Cost of Ownership | 30,404 | 29,540 | 52,599 | 20,275 | 15,010 | 0 | 0 | 0 | 0 | 147,828 |
| Allocation Issues | | | | | | | | | | |
| Corporate | | | | | | | | | | |
| Placement in Proposals | N/A | Overheads | OHs | OHs | OHs | OHs | OHs | OHs | OHs | |
| Decision | N/A | Accept | Accept | Accept | Accept | G&A | G&A | G&A | G&A | |
| Bid & Proposal (**Note**) | | | | | | | | | | |
| Placement in Proposals | N/A | Overheads | OHs | OHs | OHs | G&A | G&A | G&A | G&A | |
| Decision | N/A | Accept | Accept | Accept | Accept | Accept | Accept | Accept | Accept | |

**Note**: There never was any issue about the allocation of B&P as it appeared in the proposals.

***Auditor: Ellen E. Erdelsky***
***Date Completed: 1/26/2005***

DEPOSITION EXHIBIT
Svensson 5
2-28-08 KS

**Svensson, John H.**

| | |
|---|---|
| From: | Erdelsky, Ellen, Ms, DCAA [Ellen.Erdelsky@dcaa.mil] |
| Sent: | Tuesday, August 17, 2004 10:48 AM |
| To: | Svensson, John H. |
| Cc: | Allen, Gregory; La Francesca, Joseph, Mr, DCAA; Zaremski, Ed, Mr, DCAA |
| Subject: | ISN Rates |

John Svensson, ACO

I favor your plan B - final decision on issues that remain open (can we clearly determine what these are, or do we await the new ISN claim to see what they say is open?). What follows addresses your request on "who owes who how much."

What I did for Tish dealt with a known list of contracts, over a limited period of time, where extensive data had been gathered about amounts actually billed (and we always assumed paid). Also, after determination of over/under billing in all cases for which we had sufficient data, we then excluded those that were under-billed. So there were no offsets.

Now I am looking at an unclear list of contracts (only DOD?), over an unclear period of time (1985-1995?), where in the last four years of it there is little data about amounts actually billed. Some of the contracts for the earlier periods, which were over-billed, are not so now, due to the demands on executive compensation and state tax. If you also include offsets (those under-billed), it is certainly possible we owe them money.

Finally, over/under billing in the case of ISN is determined by comparing the total amount billed for cost (by contractor fiscal year) for each contract (a big hole is delivery order contracts for which there is little data) to the total amount of cost "per audit". What rates do I use? At this point in time the only rates I can recommend are those that I prepared for you last fall which I call the 'unilateral rates'. Since these are quite different from those in the audit reports (and concede things to ISN), then the over/under billing will be different. Some of those contracts on which we made demands for executive compensation and state tax, may now be under-billed. So if we offset, the likelihood that it would result in us owing them is increased.

Frankly, I think that we (meaning me) would spend a lot of time with very little result. However, I am willing to give it a try and let you know the results, if you can provide the following:

- List of contracts for determination - DoD, we administered
- Period of time for determination – 85-95, or 87-95
- Indirect rates to be used for determination (for 85-86, if included, these would be the rates from Tish's rate agreement for all rates but G&A.)
- Decision on whether the results on individual contracts are to be offset against one another. - mixing under/over billed KTs for 1 sum.

DFAS

I would suggest DFAS on the payment problem right up front, but I fear they would not be helpful. In particular, I do not believe they can distinguish payments for cost from payments for fee for CPFF contracts, nor payments for labor from payment for non-labor costs on T&Ms. Nor can they do it by CFY.

So, let me know what you want to do.

*Ellen E. Erdelsky*
Technical Specialist
DCAA/Silver Spring Branch Office
20251 Century Blvd., Suite 320
Germantown, MD 20874
Phone: (301) 601-6130 Fax: (301) 353-1518
Email: ellen.erdelsky@dcaa.mil

**IMPORTANT: This e-mail, including all attachments, constitute Federal Government records and property that is intended only for the use of the individual or entity to which it is addressed. It also may contain information that is privileged, confidential, or otherwise protected from disclosure under applicable law. If the reader of this e-mail transmission is not the intended recipient or the employee or agent responsible for delivering the transmission to the intended recipient, you are hereby notified that any dissemination, distribution, copying or use of this e-mail or its contents is strictly prohibited. If you have received this e-mail in error, please notify the sender by responding to the e-mail and then delete the e-mail immediately.**