IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **INFORMATION SYSTEMS & NETWORKS CORPORATION** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 06-99C** |
| **THE UNITED STATES OF AMERICA** | ) | **(Judge Block)** |
| **Defendant.** | ) | |

## MOTION TO AMEND COMPLAINT

Plaintiff, Information Systems and Networks Corporation ("ISN"), by its undersigned attorneys, hereby moves this Honorable Court for an order, amending its Complaint pursuant to Rules 7 and 15 of the Rules of the United States Court of Federal Claims ("RCFC"). A copy of the Amended Complaint with the proposed changes black lined is attached hereto as Exhibit 1. A clean Amended Complaint is attached hereto as Exhibit 2. In support of this Motion, ISN states as follows:

## BACKGROUND

1. This case was filed in 2006 appealing the final decision of the Administrative Contracting Officer ("ACO") dated February 9, 2005 ("the Final Decision") concerning the disallowance of certain claim costs in various indirect cost pools for years 1987-1995.

2. Discovery has been taken between the parties including the deposition of both parties proposed experts. The parties have exchanged voluminous documents (the

government produced over 18,000 pages which was the equivalent of the documents made available by ISN for inspection by the government).

3. As a result of the extensive discovery, ISN wishes to amend its complaint for two purposes: First, to add a new Count III seeking a money judgment against the government due to evidence that an award of indirect costs without a money judgment will provide ISN no relief. Second, for further clarification of the Final Decision issued by the ACO.

4. The defendant has refused to consent to the Amended Complaint without explanation.

**Summary of the Relief**

5. This Court is familiar with the requirements for the amendment of pleadings set forth in RCFC 15 (a) which provides, in relevant part:

> **Rule 15. Amended and Supplemental Pleading**
> (a) Amendments
> A party may amend the party's pleading once as a matter of course at anytime before a responsive pleading is served, or....within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

This subdivision encourages the court to look favorably on requests to amend. It states that "leave shall be freely given when justice so requires." This proposition has been reinforced by a numerable judicial pronouncements by federal appellate Courts, including the Federal Circuit. Amendment should be denied only when there is prejudice to the opposing party, bad faith, or futility in the amendment. IGEN International, Inc. v. Rochs Diagnostics, GMGH, 335 F.3d 303, 311 (4th Cir. 2003). None of these countervailing factors are present here.

The defendant has been fully aware of the amounts being claimed by ISN as a result of the Final Decision. Setting forth those amounts in the Amended Complaint is consistent with the Final Decision and provides the Court improved clarity over the issues that will be ultimately tried. Further, ISN's addition of the new Count III, seeking a monetary judgment, also does not prejudice the defendant, since it has known of ISN's claim to a money judgment throughout the extensive discovery period, and has in fact have taken discovery on this issue.

6. The ad damnum provision of the Complaint seeks two claims for relief against the defendant: On Count I, for judgment that the disputed items of cost as set forth in the Final Decision are allowable and are to be included in ISN's indirect cost rates for 1987-1995. Second, on Count II for judgment for CDA interest on the amounts found due and owing on Count I. Thus, arguably the Complaint require no amendment since a money judgment is already claimed. However, in the interests of full disclosure, the Amended Complaint will avoid any argument on this issue connected with trial.

7. The Amended Complaint seeks to add a new Count III seeking a money judgment in the amount of the items of indirect cost found to be allowable after trial.

8. This court has authority to grant a money judgment even when the original complaint merely sought a declaratory judgment. See, Fred Ahlert Music v. Warner/Chappell Music, 155 F.3d 17 (2nd Cir. 1998), quoting Edward B. Marks Music Corp v. Charles K. Harris Music Publication, 255 F.2d 518, 522 (2nd Cir. 1958) ("a district court may grant further relief, including monetary damages, whether or not it had been demanded or approved, in the original action for the declaratory judgment) (for emphasis).

9. A money judgment for damages as disputed indirect costs have been awarded by courts routinely. See, e.g. Lockheed Support Systems v. United States, 36 Fed. Cl. 424, 430 (1966) (awarding money judgment to government contractor for indirect costs including disputed G&A costs, overhead and profit in the amount of $639,142.56); Thompson v. Cherokee Nation, 334 F.3d 1075 (Fed Cir. 2003) (upholding award of money judgment against government for indirect administrative costs, pursuant to a contract for three separate fiscal years; and Aydin Corp. v. Widnall, 61 F.3d 1571 (Fed. Cir. 1995) (holding that contractor must be awarded money judgment for indirect costs it incurred in changing its accounting system pursuant to order of contracting officer).

10. In none of these indirect cost cases was the contractor forced to bill the government for the increase in the indirect costs due to the finding of the trial court. Instead, the contractors were awarded a money judgment for the indirect costs. In particular, Lockheed Support Systems in instructive. Lockheed Support Systems, 36 Fed. Cl. at 426-427.

11. The consideration of fairness, efficiency, entire controversy, avoidance of conflicting determinations and piecemeal litigation, as well as judicial economy, would be served by granting the Motion. There are no countervailing factors against the proposed amendments.

## CONCLUSION

Wherefore, plaintiff Information Systems and Networks Corporation requests that this Court grant the motion to amend complaint and direct the Clerk of this Court to

file the proposed amended complaint (submitted as Exhibit B to this Motion) as ISN's Amended Complaint.

June 12, 2008

Respectfully submitted,

SINGER & ASSOCIATES, P.C.

By: /s/Norman H. Singer

NORMAN H. SINGER, ESQ.
Singer & Associates, P.C.
10411 Motor City Drive
Suite 725
Bethesda, MD 20817
Telephone: (240) 395-2343
Facsimile: (301) 469-0403

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing "MOTION TO AMEND COMPLAINT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

June 12, 2008

/s/Norman H. Singer
Noman H. Singer, Esquire

EXHIBIT
tabbles
A

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| INFORMATION SYSTEMS & NETWORKS CORPORATION, Plaintiff, | ) | |
| v. | ) | No. 06-99C (Judge Block) |
| THE UNITED STATES, Defendant. | ) | |

**AMENDED COMPLAINT**

Plaintiff, Information Systems & Networks Corporation ("plaintiff" or "ISN"), by its undersigned attorneys, as and for its Amended Complaint, alleges as follows, based on personal knowledge as to its own actions as verified by its President and CEO in the operative Contract Disputes Act certified claim, and upon information and belief as to the actions of others. For those matters alleged based on ISN's information and belief, such matters are based upon, among other things, the investigation of ISN, publicly available documents, and other documents presently available to ISN.

**Nature of Action**

1. Plaintiff brings this action to appeal multiple claims submitted to the cognizant Administrative Contracting Officer ("ACO") on December ~~21~~, 14, 2004 ("the

2004 CDA Claim"), filed pursuant to the Contracts Disputes Act of 1978, 41 U.S.C. §§ 601-612, as amended ("CDA"). The 2004 CDA Claim submitted seven specific claims regarding various amounts due ISN under certain of its Government contracts previously performed by ISN. A copy of the 2004 CDA Claim, underlined in relevant part, is attached as Exhibit A.

2. As set forth in the 2004 CDA Claim, in the fifth claim for resolution, ISN was seeking the resolution of various issues connected with the establishment of its final indirect rates for the period FY 1985-1995. Based on resolution of these issues, which ISN asserted had been properly documented and supported for years, ISN requested "final rate approvals" for FY 1985-1996.

3. On February 9, 2005, the cognizant ACO issued a Final Decision, in relevant part, on the fifth portion of ISN's certified claim regarding the rate issues. In the Final Decision, the ACO states that he will "determine all final rates other than G&A and establish interim G&A rates that may be used by ISN for interim billings…" A copy of the Final Decision dated February 9, 2005 is attached as Exhibit B. ISN received a copy of the Final Decision on February 14, 2005.

4. As set forth in the 2004 CDA Claim, the defendant had refused to negotiate in good faith with ISN the issues connected with finalizing the final overhead rates. If such agreements had been reached in a timely manner, ISN would have been able to submit final invoices within 90 days following the settlement of the rates. By refusing to negotiate in good faith, the defendant did not have to reimburse ISN for final invoice amounts.

**Jurisdiction**

5. This court has jurisdiction over ISN's causes of action in that they are derived from a Final Decision by the ACO of the fifth part of ISN's 2004 CDA Claim. This action is brought directly in this Court within twelve (12) months of the date ISN received the Final Decision from which it appeals. Thus, jurisdiction lies in this Court pursuant to 28 U.S.C. § 1491 (a)(1-2), the CDA (41 U.S.C. §§ 601-612), as well as FAR 52.216-1, et seq. The cognizant ACO has issued a final decision within the prescribed time and thus, ISN's 2004 CDA Claim has been denied. The Government's issuance of the Final Decision constitutes a waiver of any defense regarding this Court's jurisdiction, including any defense premised upon the statute of limitations or collateral estoppel. In the

alternative, the Government is estopped from asserting such defenses because of the content of the Final Decision.

6. ISN, in part seeks a declaratory judgment money judgment for the amounts owed it due to the improper disallowance of certain indirect costs. Alternatively, ISN seeks a declaratory judgment under the Tucker Act, 28 U.S.C. Sec. 1491(a) (2) (1994) that such indirect costs are due and owing ISN. states that This court has jurisdiction to render judgment on both monetary and nonmonetary claims brought in this Court under Sec. 10 (a) (1) of the CDA, based on denials of contractors claims to the ACO under Sec. 6 of the CDA, 41 U.S.C. Sec, 605 (1994 & Supp. III 1997). A complaint for declaratory judgment appealing a denial of claims by the ACO's Final Decision falls within the Court's jurisdiction over "nonmonetary claims."

**The Parties**

7. The plaintiff is a small, minority-owned business, incorporated under the laws of the State of Maryland, having its corporate headquarters at 10411 Motor City Drive, Bethesda, MD 20817. Since its inception in 1980, ISN has been an experienced company in the field of computer/telecommunications/security systems integration engineering. Until recently, it provided services and

supplies to the various agencies of the United States Government, as well as to commercial clients.

8. Defendant is the Government of the United States of America, acting by and through its designated ACO and other authorized representatives, including but not limited to, the Defense Contract Management Agency ("DCMA"), the Defense Logistics Agency ("DLA") and the Defense Contract Audit Agency ("DCAA").

## Factual Allegations

**Background - The Establishment of Final Rates**

9. The disputed cost issues raised in the 2004 CDA Claim and then addressed by the ACO in his Final Decision all pertain to indirect cost.~~issues~~. Thus, the disputed costs are not specific to any one contract but were incurred by ISN for more than one cost objective.

10. In determining the allowable costs under its Government contracts, ISN want~~s~~ed to apply final overhead rates to the appropriate contracts' bases. A final overhead rate is generally computed as a percentage or dollar factor that expresses the ratios of indirect expenses incurred in a specific period to the direct labor, total cost input, or some other appropriate base for the same period. Final overhead rates are necessary to determine the cost incurred under cost reimbursement type

contracts as well as incentive and fixed price redeterminable type contracts. The establishment of final indirect rates is the equivalent of a contractor having the means to be paid its full entitlement under its contracts no later than one year from when the contract performance ended.

11. How the final rates are established is set forth in detail in the Federal Acquisition Regulations ("the FAR"). Subpart 42.7 of the FAR outlines the mandatory procedures for establishing the rates. If a component of the rate is disputed, the contractor such as ISN has the right to address the disputed component under the CDA. That was, in part, the purpose of the 2004 CDA Claim.

12. ISN's indirect cost rates for FY 1985-1986 are not in dispute. The rates for FY 1985-1986 (with the exception of the G&A rate) were settled between the parties by means of an Indirect Cost Rate Agreement signed by ISN on January 29, 1998 and by the ACO on March 3, 1998. Indirect rates for 1987-1995 are in dispute. Likewise, final indirect rates have been agreed to for FY 1996, 1997, and 1998 pursuant to agreements dated September 3, 2002.

13. The ACO in the Final Decision determined all final rates for ISN for the designated periods, other than G&A, and also established interim G&A rates that allegedly

could be used by ISN for its interim billings. The G&A rates ~~are~~ were interim because there ~~is~~ was outstanding and ~~currently~~ then in litigation the issue over the allowability of reimbursement of ISN's state tax cost as a Subchapter S corporation. That issue has now been resolved.

**The Findings of the ACO on the Disputed Cost Issues.**

14. Historically, ISN accepted and adjusted its indirect cost rates for all DCAA findings except for the following: (a) Cost of Ownership of the building which houses ISN and is owned by ISN's stockholder, a related party; (b) Cost of Bonuses (this has been ~~resolved~~ admitted by the Government to be due ISN); (c) Cost of ISN's Pension Plan for 1992 and 1995; (d) Cost of Ownership regarding equipment rentals; (e) Multiple small items; and ~~(e~~ f) Corporate and B&P Allocations.

15. On the issue of Cost of Ownership-Building, the ACO claimed the defendant had developed a reasonable methodology to determine cost of ownership and that ISN's methodology was flawed. As a result, ~~$255,453 was~~ the rental costs in excess of the Government's calculations of cost of ownership were disallowed for each of the nine fiscal years (1988-1995). ~~FY 1987~~ ~~which~~ ISN disputes this ~~because its~~ and claims its methodology for establishing

ownership costs was reasonable and should have been acceptable to the ~~ACO~~ Government. ISN alleges that its allowable rent does not exceed the ownership costs. Such rent which is required to be allowable totals at least $1.4 million dollars.

16. The ACO allowed bonus costs for 1992, 1994 and 1995 totaling $722,207.

17. The ACO disallowed the cost of pensions for FY 1992 and 1995 totaling $741,723 on the grounds that the payments were made late by ISN. ISN claims that these costs were incurred and paid and should be includable as a result of the allowable application of forfeitures and costs paid by ISN.

18. The ACO disallowed cost of ownership regarding rental equipment in the sum of $162,451 because of an arbitrary disallowance by the ACO of 35% of the rental costs incurred.

19 The ACO disputed and disallowed multiple small items totaling $53,680 without justification or basis.

20. The defendant failed to issue required Form 1s to ISN regarding the issues in dispute in the settlement of final indirect rates in a timely manner, some Form 1s being issued as late as May, 2000. Prior to that time, the defendant either failed to act in good faith with respect

to resolving the various issues or intentionally refused to resolve the various issues. The result of this conduct caused the rates to remain open, thereby preventing ISN from billing and closing out its Government contracts. Attached as Exhibit C is a schedule of the issuance of Form 1s as discussed herein.

**Count I**

**(For Declaratory Judgment That Disallowed Indirect Costs Are Allowable)**

21. ISN repeats and realleges paragraphs 1 through 20 of this Amended Complaint as if fully set forth herein.

22. The disallowed costs by the ACO as set forth herein and in his Final Decision have no basis and are not reasonable. All of the disallowed costs should have been included in the ACO's fringe and overhead rate calculations for the FY 1987-1995.

23. The ACO's establishment of interim G&A rates for FY 1987-1995, based on the disallowances as set forth herein, were unjustified and unreasonable. Including the disallowed costs would increase ISN's interim G&A rates for the designated periods.

## COUNT II

**(For CDA Interest)**

24. ISN repeats and realleges paragraphs 1 through 23 of this Complaint as if fully set forth herein.

25. ISN is entitled to CDA interest on the allowable amounts found to be due and owing under Counts I and III of this Complaint from December 14, 2004 to when allowed and paid, at the allowable CDA interest rate.

26. ISN seeks judgment against the defendant in the amount of CDA interest found to be due and owing until payment.

## Count III

**(For Judgment for The Disallowed Indirect Costs ~~Are Allowable~~)**

27. ISN repeats and realleges paragraphs 1 through 26 of this Amended Complaint as if fully set forth herein.

28. The disallowed costs by the ACO as set forth herein and in his Final Decision have no basis and are not reasonable. All of the disallowed costs should have been included in the ACO's fringe and overhead rate calculations for the FY 1987-1995.

29. The ACO's establishment of interim G&A rates for FY 1987-1995, based on the disallowances as set forth herein, were unjustified and unreasonable. Including the

disallowed costs would increase ISN's interim G&A rates for the designated period, but does not provide relief for ISN.

30. ISN is entitled to judgment for (i) at least $1.4 million for allowable rent, (ii) at least $700,000 for allowable bonuses agreed to by the defendant, (iii) at least $741,723 for pension costs for 1992 and 1995, (iv) at least $160,000 for cost of equipment; (v) at least $18,000 for multiple small items; and (vi) an amount to be determined at trial for improper allocation of costs from overhead to G&A.

WHEREFORE, the premises considered, plaintiff, Information Systems and Networks Corporation, respectfully demands judgment against the defendant, the United States, as follows:

A. On Count I, for a declaration that the disputed items of cost are allowable and ISN is entitled to such amounts;

B. Counts I or III, for CDA interest on the amounts found due and owing until paid; and

C. On Count III, for judgment in an amount of least $2.0 million; and

D. For such other and further relief as this Court may deem proper.

Dated: June ___ 2008

Respectfully submitted,

SINGER & ASSOCIATES

By:______________________________

NORMAN H. SINGER, ESQUIRE
Singer & Associates, P.C.
10411 Motor City Drive
Suite 725
Bethesda, MD 20817
Telephone: (240) 395-2343
Facsimile: (301) 469-0403
Counsel for Plaintiff

EXHIBIT

B

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| INFORMATION SYSTEMS & NETWORKS CORPORATION<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant. | No. 06-99C<br>(Judge Block) |

**AMENDED COMPLAINT**

Plaintiff, Information Systems & Networks Corporation ("plaintiff" or "ISN"), by its undersigned attorneys, as and for its Amended Complaint, alleges as follows, based on personal knowledge as to its own actions as verified by its President and CEO in the operative Contract Disputes Act certified claim, and upon information and belief as to the actions of others. For those matters alleged based on ISN's information and belief, such matters are based upon, among other things, the investigation of ISN, publicly available documents, and other documents presently available to ISN.

**Nature of Action**

1. Plaintiff brings this action to appeal multiple claims submitted to the cognizant Administrative Contracting Officer ("ACO") on December 14, 2004 ("the 2004

CDA Claim"), filed pursuant to the Contracts Disputes Act of 1978, 41 U.S.C. §§ 601-612, as amended ("CDA"). The 2004 CDA Claim submitted seven specific claims regarding various amounts due ISN under certain of its Government contracts previously performed by ISN. A copy of the 2004 CDA Claim, underlined in relevant part, is attached as Exhibit A.

2. As set forth in the 2004 CDA Claim, in the fifth claim for resolution, ISN was seeking the resolution of various issues connected with the establishment of its final indirect rates for the period FY 1985-1995. Based on resolution of these issues, which ISN asserted had been properly documented and supported for years, ISN requested "final rate approvals" for FY 1985-1996.

3. On February 9, 2005, the cognizant ACO issued a Final Decision, in relevant part, on the fifth portion of ISN's certified claim regarding the rate issues. In the Final Decision, the ACO states that he will "determine all final rates other than G&A and establish interim G&A rates that may be used by ISN for interim billings…" A copy of the Final Decision dated February 9, 2005 is attached as Exhibit B. ISN received a copy of the Final Decision on February 14, 2005.

4. As set forth in the 2004 CDA Claim, the defendant had refused to negotiate in good faith with ISN the issues connected with finalizing the final overhead rates. If such agreements had been reached in a timely manner, ISN would have been able to submit final invoices within 90 days following the settlement of the rates. By refusing to negotiate in good faith, the defendant did not have to reimburse ISN for final invoice amounts.

## Jurisdiction

5. This court has jurisdiction over ISN's causes of action in that they are derived from a Final Decision by the ACO of the fifth part of ISN's 2004 CDA Claim. This action is brought directly in this Court within twelve (12) months of the date ISN received the Final Decision from which it appeals. Thus, jurisdiction lies in this Court pursuant to 28 U.S.C. § 1491 (a)(1-2), the CDA (41 U.S.C. §§ 601-612), as well as FAR 52.216-1, et seq. The cognizant ACO has issued a final decision within the prescribed time and thus, ISN's 2004 CDA Claim has been denied. The Government's issuance of the Final Decision constitutes a waiver of any defense regarding this Court's jurisdiction, including any defense premised upon the statute of limitations or collateral estoppel. In the

alternative, the Government is estopped from asserting such defenses because of the content of the Final Decision.

6. ISN, seeks a money judgment for the amounts owed it due to the improper disallowance of certain indirect costs. Alternatively, ISN seeks a declaratory judgment under the Tucker Act, 28 U.S.C. Sec. 1491(a) (2) (1994) that such indirect costs are due and owing ISN. This court has jurisdiction to render judgment on both monetary and nonmonetary claims brought in this Court under Sec. 10 (a) (1) of the CDA, based on denials of contractors claims to the ACO under Sec. 6 of the CDA, 41 U.S.C. Sec, 605 (1994 & Supp. III 1997). A complaint for declaratory judgment appealing a denial of claims by the ACO's Final Decision falls within the Court's jurisdiction over "nonmonetary claims."

**The Parties**

7. The plaintiff is a small, minority-owned business, incorporated under the laws of the State of Maryland, having its corporate headquarters at 10411 Motor City Drive, Bethesda, MD 20817. Since its inception in 1980, ISN has been an experienced company in the field of computer/telecommunications/security systems integration engineering. Until recently, it provided services and

supplies to the various agencies of the United States Government, as well as to commercial clients.

8. Defendant is the Government of the United States of America, acting by and through its designated ACO and other authorized representatives, including but not limited to, the Defense Contract Management Agency ("DCMA"), the Defense Logistics Agency ("DLA") and the Defense Contract Audit Agency ("DCAA").

**Factual Allegations**

**Background - The Establishment of Final Rates**

9. The disputed cost issues raised in the 2004 CDA Claim and then addressed by the ACO in his Final Decision all pertain to indirect cost. Thus, the disputed costs are not specific to any one contract but were incurred by ISN for more than one cost objective.

10. In determining the allowable costs under its Government contracts, ISN wanted to apply final overhead rates to the appropriate contracts' bases. A final overhead rate is generally computed as a percentage or dollar factor that expresses the ratios of indirect expenses incurred in a specific period to the direct labor, total cost input, or some other appropriate base for the same period. Final overhead rates are necessary to determine the cost incurred under cost reimbursement type

contracts as well as incentive and fixed price redeterminable type contracts. The establishment of final indirect rates is the equivalent of a contractor having the means to be paid its full entitlement under its contracts no later than one year from when the contract performance ended.

11. How the final rates are established is set forth in detail in the Federal Acquisition Regulations ("the FAR"). Subpart 42.7 of the FAR outlines the mandatory procedures for establishing the rates. If a component of the rate is disputed, the contractor such as ISN has the right to address the disputed component under the CDA. That was, in part, the purpose of the 2004 CDA Claim.

12. ISN's indirect cost rates for FY 1985-1986 are not in dispute. The rates for FY 1985-1986 (with the exception of the G&A rate) were settled between the parties by means of an Indirect Cost Rate Agreement signed by ISN on January 29, 1998 and by the ACO on March 3, 1998. Indirect rates for 1987-1995 are in dispute. Likewise, final indirect rates have been agreed to for FY 1996, 1997, and 1998 pursuant to agreements dated September 3, 2002.

13. The ACO in the Final Decision determined all final rates for ISN for the designated periods, other than G&A, and also established interim G&A rates that allegedly

could be used by ISN for its interim billings. The G&A rates were interim because there was outstanding and then in litigation the issue over the allowability of reimbursement of ISN's state tax cost as a Subchapter S corporation. That issue has now been resolved.

**The Findings of the ACO on the Disputed Cost Issues.**

14. Historically, ISN accepted and adjusted its indirect cost rates for all DCAA findings except for the following: (a) Cost of Ownership of the building which houses ISN and is owned by ISN's stockholder, a related party; (b) Cost of Bonuses (this has been admitted by the Government to be due ISN); (c) Cost of ISN's Pension Plan for 1992 and 1995; (d) Cost of ownership regarding equipment rentals; (e) Multiple small items; and (f) Corporate and B&P Allocations.

15. On the issue of Cost of Ownership-Building, the ACO claimed the defendant had developed a reasonable methodology to determine cost of ownership and that ISN's methodology was flawed. As a result, the rental costs in excess of the Government's calculations of cost of ownership were disallowed for each of the nine fiscal years (1988-1995). ISN disputes this and claims its methodology for establishing ownership costs was reasonable and should have been acceptable to the Government. ISN alleges that

its allowable rent does not exceed the ownership costs. Such rent which is required to be allowable totals at least $1.4 million dollars.

16. The ACO allowed bonus costs for 1992, 1994 and 1995 totaling $722,207.

17. The ACO disallowed the cost of pensions for FY 1992 and 1995 totaling $741,723 on the grounds that the payments were made late by ISN. ISN claims that these costs were incurred and paid and should be includable as a result of the allowable application of forfeitures and costs paid by ISN.

18. The ACO disallowed cost of ownership regarding rental equipment in the sum of $162,451 because of an arbitrary disallowance by the ACO of 35% of the rental costs incurred.

19. The ACO disputed and disallowed multiple small items totaling $53,680 without justification or basis.

20. The defendant failed to issue required Form 1s to ISN regarding the issues in dispute in the settlement of final indirect rates in a timely manner, some Form 1s being issued as late as May, 2000. Prior to that time, the defendant either failed to act in good faith with respect to resolving the various issues or intentionally refused to resolve the various issues. The result of this conduct

caused the rates to remain open, thereby preventing ISN from billing and closing out its Government contracts. Attached as Exhibit C is a schedule of the issuance of Form 1s as discussed herein.

**Count I**

**(For Declaratory Judgment That Disallowed Indirect Costs Are Allowable)**

21. ISN repeats and realleges paragraphs 1 through 20 of this Amended Complaint as if fully set forth herein.

22. The disallowed costs by the ACO as set forth herein and in his Final Decision have no basis and are not reasonable. All of the disallowed costs should have been included in the ACO's fringe and overhead rate calculations for the FY 1987-1995.

23. The ACO's establishment of interim G&A rates for FY 1987-1995, based on the disallowances as set forth herein, were unjustified and unreasonable. Including the disallowed costs would increase ISN's interim G&A rates for the designated periods.

**COUNT II**

**(For CDA Interest)**

24. ISN repeats and realleges paragraphs 1 through 23 of this Complaint as if fully set forth herein.

25. ISN is entitled to CDA interest on the allowable amounts found to be due and owing under Counts I and III of this Complaint from December 14, 2004 to when allowed and paid, at the allowable CDA interest rate.

26. ISN seeks judgment against the defendant in the amount of CDA interest found to be due and owing until payment.

**Count III**

**(For Judgment for The Disallowed Indirect Costs)**

27. ISN repeats and realleges paragraphs 1 through 26 of this Amended Complaint as if fully set forth herein.

28. The disallowed costs by the ACO as set forth herein and in his Final Decision have no basis and are not reasonable. All of the disallowed costs should have been included in the ACO's fringe and overhead rate calculations for the FY 1987-1995.

29. The ACO's establishment of interim G&A rates for FY 1987-1995, based on the disallowances as set forth herein, were unjustified and unreasonable. Including the

disallowed costs would increase ISN's interim G&A rates for the designated period, but does not provide relief for ISN.

30. ISN is entitled to judgment for (i) at least $1.4 million for allowable rent, (ii) at least $700,000 for allowable bonuses agreed to by the defendant, (iii) at least $741,723 for pension costs for 1992 and 1995, (iv) at least $160,000 for cost of equipment; (v) at least $18,000 for multiple small items; and (vi) an amount to be determined at trial for improper allocation of costs from overhead to G&A.

WHEREFORE, the premises considered, plaintiff, Information Systems and Networks Corporation, respectfully demands judgment against the defendant, the United States, as follows:

A. On Count I, for a declaration that the disputed items of cost are allowable and ISN is entitled to such amounts;

B. Counts I or III, for CDA interest on the amounts found due and owing until paid; and

C. On Count III, for judgment in an amount of least $2.0 million; and

D. For such other and further relief as this Court may deem proper.

Dated: June ___ 2008

Respectfully submitted,

SINGER & ASSOCIATES

By: /s/Norman H. Singer

NORMAN H. SINGER, ESQUIRE
Singer & Associates, P.C.
10411 Motor City Drive
Suite 725
Bethesda, MD 20817
Telephone: (240) 395-2343
Facsimile: (301) 469-0403
Counsel for Plaintiff