**********************************************************

**UNITED STATES COURT OF FEDERAL CLAIMS**

**********************************************************

**06-99C**
**(Judge Block)**

**INFORMATION SYSTEMS & NETWORKS CORPORATION,**

**Plaintiff,**

**v.**

**THE UNITED STATES OF AMERICA**

**Defendant.**

**********************************************************

# PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER AND *IN LIMINE* TO PREVENT THE TESTIMONY OF DEFENDANT'S PROPOSED EXPERT, ELLEN E. ERDELSKY

**********************************************************

NORMAN H. SINGER, Esq.
Singer & Associates, P.C.
10411 Motor City Drive
Suite 725
Bethesda, MD 20817
Telephone: (240) 395-2343
Facsimile: (301) 469-0403

Attorneys for Plaintiff

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ..... ii

QUESTIONS PRESENTED ..... 2

STATEMENT AND SUMMARY OF THE CASE ..... 2

STATEMENT OF THE FACTS ..... 3

LEGAL ARGUMENT ..... 9

A. The Applicable Expert Standard. ..... 9

B. Erdelsky Is Not Qualified to Provide An Expert Opinion in this Matter ..... 13

C. Erdelsky's Concerns About Serving As An Expert Witness ..... 6

D. Erdelsky's Report Is Inadmissible Because Her Offered Opinions Are Irrelevant ..... 18

E. Erdelsky's Testimony Should Be Excluded Because Defendant Has Failed To Produce Relevant Evidence ..... 20

F. ISN Is Entitled To A Protective Order Pursuant To F.R. Civ. P. 26(c) ..... 21

CONCLUSION ..... 22

CERTIFICATE OF SERVICE ..... 23

## TABLE OF AUTHORITIES

**CASE CITATIONS** **Page(s)**

Aguilar v. International Longshoremen's Union, 966 F.2d 443 (9th Cir. 1992) .......... 11

Air Crash Disaster at New Orleans, LA. 795 F.2d 1230, 1233-34 (5th Cir. 1986) .......... 12

Andrews v. Metro North Commuter Railroad Co., 882 F.2d 705 (2nd Cir. 1989) .......... 12

Apponi v. Sunshine Biscuits, Inc., 809 F.2d 1210 (6th Cir. 1987) .......... 12

Burns v. Secretary of DHHS, 3 F.3d 415 (D.C. Cir. 1993) .......... 19

Cacciola v. Selco Balers, Inc., 127 F. Supp. 2d 175, 180-81 (E.D.N.Y. 2001) .......... 13

Comer v. American Electric Power, 63 F. Supp. 2d 927, 935 (N.D. Ind. 1999) .......... 17

Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592 (1993) .......... 9, 18

De Jager Construction, Inc. v. Scheininger, 938 F. Supp. 446, 449 (W.D. Mich. 1996) .......... 18-19

Eastern Mineral Int'l Inc. v. United States, 621 Fed. Cl. 621 (1997) .......... 16

Edison Intern'l Inc. v. United States, 10 Cl. Ct. 287 (1986) .......... 19

Glendale Federal Bank, FSB v. United States, 39 F.2d. 422 (1977) .......... 17

Haynes v. American Motors Corp., 691 F.2d 1268 (8th Cir. 1982) .......... 9

Horsham v. A.H. Robins Co., 734 F.2d 676, 685 (11th Cir. 1984) .......... 11

**Page(s)**

Johnson v. United States, 11 Cl. Ct. 17 (1986) ... 14

King v. McKillop, 112 F. Supp. 2d 1214, 1222 (D. Colo. 200) ... 19

Koch v. Gorilla, 552 Fed. 2d 1130 (6th Cir. 1977) ... 16

Krueger v. Johnson & Johnson Professionals, Inc., 160 F. Supp. 2d 1026, 1031 (S.D. Iowa 2001) ... 14

Kumho Tire Co., Ltd v. Carmichael, 526 U.S. 137. (1999) ... 10

Libas, Ltd., v. United States, 193 F.3d 1361, 1366 (Fed. Cir. 1999) ... 19

Marx & Co. v. Diners' Club, Inc., 550 F.2d 505 (2nd Cir. 1977), cert. denied, 98 S. Ct. 188, 434 U.S. 861 (1977) ... 12

Mike's Train House, Inc., v. Lionel, L.L.C., 472 F.3d 398 (6th Cir. 2006) (misappropriation of trade secrets). ... 13

Milsapv v. McDonald Douglas Corp., 162 F. Supp. 1262, 1308-09 ... 20
(N.D. Okla. 2001)

Minasian v. Standard Chartered Bank, 109 F.3d 1212, 1216 (7th Cir. 1997) ... 17

Montgomery v. Aetna Casualty and Surety Co., 898 F.2d 1537 (11th Cir. 1990) ... 12

Ninth Ave. Remedial Group v. Allis-Chalmers Corp., 141 F. Supp. 2d 957, 959 (N.D. Ind. 2001) ... 17

Perreira v. Department of Health and Human Svcs., 33 F.3d 1361, 1366 (Fed. Cir. 1999) ... 19

Peterson v. City of Plymouth, 60 F.3d 469 (8th Cir. 1995) ... 11

Salem v. United States Lines Co., 370 U.S. 31 82 S. St. 1119, (1962)) ... 11

**Page(s)**

Seaboard Lumber Co. v. United States, 308 F.3d 1283, 1302 (Fed. Cir. 2002) ..... 9

Sittig v. Louisville Ladder Group, LLC, 136 F. Supp. 2d 610, 615-16 (W.D. La. 2001) ..... 14

Taylor v. Ouachita Parish School Board, 648 F.2d 959 (5th Cir. 1981) ..... 16

Trigon Ins. Co. v. United States, 234 F. Supp. 2d. 592, 594 N.1 (E.D. Va. 2002 ..... 20

Trigon Ins. Co. v. United States, 204 F.R.D. 277 (E.D. Va 2001) ..... 20

United States v. Bilzerian, 926 F.2d 1285, 1294-95 (2d Cir. 1991), cert. denied, 112 S.Ct. 63, 116 L.Ed 2d 39 (1991) ..... 12

United States v. Scop., 846 F.2d 135 (2nd Cir. 1988) ..... 12

U.S. v. Downing,753 F.2d 1224, 1235 (3rd Cir. 1985) ..... 11

U.S. v. Hirschberg, 988 Fed. 2d 1509 (7th Cir. 1993) cert. denied, 114 S. Ct. 311, 510 U.S. 918, 126 L.Ed 258 ..... 15

U.S. v. Race, 632 F.2d 1114 (4th Cir. 1980) ..... 12

Virginia Vermicultie, Ltd. v. W.R. Grace & Co., 98 F. Supp. 2d 729 (W.D. Va 2000) ..... 14

Vitronics Corp. v. Conceptionic, Inc., 90 F.3d 1576, 1584 (1966) ..... 18

Zlotolow v. United States, 35 Fed. Cl. 133 (1966) ..... 10

**Rules and Regulations** **Page(s)**

R.C.F.C. 26 ..... 21

R.C.F.C. 26(a)(2) ..... 16

R.C.F.C. 26(a) and 26 (e)(1) ..... 20

R.C.F.C. 26(c) ..... 1

R.C.F.C. 30(b)(6) ..... 8

R.C.F.C. 37 ..... 21

F.R.Evid. 403 ..... 9

F.R.Evid. 702 ..... 1, 10, 11

F.R.Evid. 104(a) ..... 10

F.R.Evid. 104,401,703 ..... 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **INFORMATION SYSTEMS & NETWORKS CORPORATION** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 06-99C** |
| **THE UNITED STATES OF AMERICA** | ) | **(Judge Block)** |
| **Defendant.** | ) | |

**PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER AND *IN LIMINE* TO PREVENT THE TESTIMONY OF DEFENDANT'S PROPOSED EXPERT, ELLEN E. ERDELSKY**

Plaintiff, Information Systems & Networks Corporation ("ISN"), by its undersigned attorneys, hereby moves this Honorable Court for a protective order pursuant to Rule 26(c) of the Rules of the Court of Federal Claims ("R.C.F.C.") and *In Limine* pursuant to Rules 104, 401, 702, and 703 of the Federal Rules of Evidence ("F.R.Evid.") to exclude the testimony of defendant's proposed expert, Ellen E. Erdelsky ("Erdelsky") ("the Motion"). The exclusion of Erdelsky is appropriate because she is not qualified to act as an expert in this litigation and her expert report should not be used by any other witness. Moreover, to the extent Erdelsky is deemed qualified to offer any opinion in this matter, the Motion should be granted because Erdelsky's report and proposed testimony does not reflect any methodology that is either reliable or relevant to any issue in this litigation, and therefore will not assist the Court in its role as trier of the facts. In addition, given her prior work and decision-making as an auditor for the Defense Contract Audit Administration ("DCAA") on the very indirect cost issues which are the

subject of this case, she has an established bias and prejudice against ISN which precludes her role as a qualified expert. [1]

## QUESTIONS PRESENTED

Whether this Court should exclude the opinion testimony of defendant's proposed expert because she is neither qualified to act as an expert nor are her opinions reliable or relevant to any issue in this case.

## STATEMENT OF THE CASE

### A. Summary of the Case

This case involves the appeal of ISN from the Final Decision of the Administrative Contracting Officer ("ACO") dated February 9, 2005 ("the Decision"), disallowing certain claimed costs by ISN in various indirect cost pools for nine (9) fiscal years: 1987-1995. These disallowed costs include:

(a) approximately $1.4 million in disallowed rental costs for ISN office space;
(b) more than $700,000 in contribution costs to ISN's pension plan;
(c) equipment costs in excess of $140,000;
(d) cost allocation issues [2] ;
(e) more than $50,000 in multiple small item costs;
(f) cost of bonuses [3]
(g) cost issues regarding ISN's executive compensation [4]

The defendant's defense to the ISN claims in this case relies upon the Decision which is nothing more than a reiteration of Erdelsky's prior audit positions. These

---

[1] Both Erdelsky's expert deposition as well as her fact deposition have been taken. Excerpts of those depositions relevant to the Motion are set forth in the Appendix. The purpose in filing the Motion at this time is that issues over an expert should be resolved as early as possible and all of the necessary support has been obtained from both of the depositions.

[2] To date, the defendant has not quantified the results of the Decision pertaining to cost allocations or the allocation of the questioned corporate expenses.

[3] This issue has been withdrawn by the defendant in that the Decision allows these costs. However, ISN's relief will require the inclusion of these costs which to date have not been reimbursed to ISN.

[4] To date, the defendant has not quantified this issue.

Positions are either set forth in reports covering the audits of ISN's incurred costs for each of the nine years in question, or later revised by Erdelsky contrary to what is in the original audit reports. Thus, Erdelsky's position on each of the claimed costs is both the bases of the Decision and continues as the defense in this case with nothing new added in her expert report.

## STATEMENT OF FACTS

### A. Erdelsky's Role Prior to Engagement As Expert

Virtually all of Erdelsky's professional experience has been as an auditor for DCAA over a 28 year period. She performed the audits of ISN's Incurred Costs Submissions ("the ISN Submissions") for each of seven years (1988-1991 and 1996-1998) ("none of the audit work was done by anyone else"); completed the incurred cost audits of ISN's Submission for 1987, and prepared supplemental and revised audit reports for ISN's Submissions for five years (1985-1986 and 1992-1995). She began her audit work of ISN in 1993 and estimated working virtually exclusively on ISN until 2007. (App. 12-35).

At one time, and for about seven months, she was physically located at the offices of ISN. Each of the cost issues in this case arose as a result of Erdelsky's audit functions regarding the ISN Submissions. She also revised certain earlier DCAA positions regarding a claimed cost because in her view, it was incorrect. However, most if not all of the substantial financial issues, i.e., cost of ownership, pension and equipment costs, were formulated, articulated, and implemented by Erdelsky in the ordinary course of her role as a DCAA auditor as set forth in the audit report for each of the years. In the performance of her duties and responsibilities as an auditor, Erdelsky

prepared numerous memoranda, work papers, analyses and calculations in spreadsheets. These documents support the positions being taken by her as auditor on the disallowance of the costs which are the issues in this case. Thus, from the defendant's standpoint, Erdelsky is the most significant (if not the only) fact witness and its designated expert. (See, eg. App. at 69-73).

In addition, and particularly during the period 2000-2005, Erdelsky participated in meetings, conferences and dialogue with ISN. At these times, she made certain admissions regarding claimed costs which are the subject of this case.[5] She also worked closely with the ACO in the preparation of the Decision, including reviewing and editing multiple drafts of the Decision before it was finalized. (App. at 74-82).

As a result, it is actually Erdelsky's audit positions which are the issues in this case.

## B. The Opinions in Erdelsky's Report

Erdelsky authored an expert report, which she calls a "memorandum," by way of her engagement by the attorneys for the defendant. (A copy of Erdelsky's expert report dated January 24, 2008 is attached in the (App. 1-11) ("the Report"). Erdelsky described her engagement as setting forth her "discussion and conclusions on specific issues in the complaint and in the expert report of Charles L. Bonuccelli."[6]

In the Report, Erdelsky offers the following opinions:

First, that the method used by the ISN to determine its related party ownership costs and compare them with its rental costs was incorrect because it is not consistent with her approach. (App. 1-11). Thus, the original conclusion that the rental costs do not exceed the ownership costs for fiscal years 1988-1992 and 1994-1995, and that excess

[5] These admissions will be the subject of a separate motion *In Limine* to establish as admitted those facts which she has previously conceded.

[6] Mr. Bonuccelli is the expert of ISN.

rental costs in those years are not allowable pursuant to FAR 31.205-36(b)(3) is dependant solely on her calculations and conclusions.

Second, while she does not contest that the issue of ISN employee bonuses has been resolved, she does not quantify the amount of these employee bonuses that should be reimbursed to ISN. The Report is silent on this issue. It does not explain how ISN should be reimbursed on those costs.

Third, with respect to pension costs she reiterates the prior audit positions that ISN failed to conform to the requirements of the FAR. She concludes that the funding of the required plan amounts was not done on a timely basis and that such costs cannot be claimed in a subsequent year.

Fourth, she claims that the ISN support provided for the equipment rental costs was not adequate under the "clear expectations" of FAR 31.205-36.

Finally, with respect to corporate allocations and multiple small items she relies on the Form One notices as well as ISN's alleged agreement for the partial disallowance of those items.

None of the factual conclusions are any different from the conclusions set forth by Erdelsky in her earlier audit reports on ISN's Submissions. In fact, all six Audit Reports considered by Erdelsky in preparing the Report were prepared by her. Thus, she is only supporting her prior positions, and adding nothing new. The Report is nothing more than a repeat of those positions in her Audit Reports and as such is gratuitous and argumentative.

In summary, what "expert" work Erdelsky performed to prepare the Report was nothing more than to excerpt parts of her earlier audit work, decide what portions of that work should be included in her expert report and then copy the work.

Erdelsky's pronouncements on each of the cost issues is nothing more than supporting her own prior positions under the guise of expert testimony. [7]

**C. Erdelsky's Concerns About Serving As An Expert Witness**

To her credit, Erdelsky recognized that she could not serve as an expert witness in this case because of her involvement in the underlying facts:

> My previous experience with DCAA had drawn a distinction between a fact witness and an expert witness, and guidance that I had read previously, years back, had said that an ordinary auditor could be a fact witness, but would not be an expert witness, that would have to be someone that meets supervisory auditor status. I came back in now and I've learned that indeed that it changed many years in the past, but has past me by, I mean, I had never had an occasion to run into this circumstance, so I did not know about it (App. at 47-48).

Erdelsky testified that she was initially contacted by counsel for the Government in this case in the early part of January, 2008. The discussion involved her role as an expert and her preparation of an expert report. Her initial reaction was that she did not think she could be an expert and that she would review her position with DCAA.

> When that discussion was completed, I did indeed contact others, and that's when I found out that indeed I could be such an expert, but I must say, I've been walking or trying to walk very carefully in these circumstances since I've never been through this before (App. at 50-51).

After being asked to serve as an expert, Erdelsky did not agree and expressed reservations that she was not qualified. Rather than have counsel of record in this case make the determination, (or even discuss it with them), she opted to seek advice from DCAA. (App. at 54). She ultimately contacted David C. Hoffman, deputy general counsel of DCAA. In three emails, all of which have been withheld by the defendant,[8]

---

[7] This is comparable to the doctor who is sued for malpractice, serving as his only expert witness. While he could testify as to his conduct, the doctor would not be "qualified" as an expert. See discussion under Legal Argument at 10 herein.

[8] See Argument E infra explaining that the failure to produce the emails is so blatantly wrong, Erdelsky

Mr. Hoffman apparently opined that Erdelsky could serve as an expert. Erdelsky was unable to explain why. At no time, however, did counsel of record in this case provide an opinion as to whether she was qualified.[9]

It is not known why Erdelsky's initial reaction that only a supervising auditor would be properly qualified to serve as an expert was not followed. Certainly a supervising auditor – independent from the actual audits giving rise to the disallowments – would provide the Court a more "independent" opinion on the underlying issues.

In any event, the withholding of the emails coupled with Erdelsky's failure to understand why DCAA thought her qualified certainly further demonstrates her sycophantic role.

**D. <u>Erdelsky's Qualifications [10]</u>**

Erdelsky is a certified public accountant. She has never practiced privately. Virtually all of her professional work has been as an auditor or "technical specialist" for the DCAA. She has never been qualified or utilized by the defendant as an expert witness. She has never authored, signed, or co-authored any paper, or other publication on any government cost-accounting issue or on any accounting issue or any other issue for that matter. She has never been involved with or has had any experience in dealing with the cost issues which are the subject of this case other than with the ISN audits. The facts are clear that with respect to the office rental and pension cost issues, her only exposure has been with the ISN Submissions despite requests from the ACO for her to obtain outside qualified help and experienced personnel on those issues. She never did

---

should be excluded for that reason alone.

[9] It is interesting that this judgment was made by an unrelated DCAA attorney and regional manager non-attorney and not by counsel of record in this case. Clearly, serving as an expert witness is not governed by DCAA regulations or qualifications but rather by the Rules of this Court.

[10] The question is not simply whether a witness has qualifications generally, but whether the witness has training, experience, etc., with respect to the issues being tried.

so. She has never been qualified as an expert by any court in any field and therefore has never testified as an expert in any proceedings.

The fact that she is a certified public accountant is not necessary at all to read the FAR and determine what it requires. Erdelsky is now retired; she says she is a "federal government annuitant". She says that she has been rehired by her former agency (DCAA) on an intermittent basis "precisely to provide assistance in regard to litigation involving Information Systems and Networks Corporation." She was paid $1,961.20 for her expert report.

She previously testified as a fact witness against ISN in the case of Information Systems and Networks Corporation v. U.S., Case No. 98-663C, which involved ISN's claim for the reimbursement of state income taxes. Her role was limited to providing the percentage of ISN's flexibly priced contracts from 1985-2002. (App. at 60-68). She was also offered as a designee by the government in compliance with a R.C.F.C. 30(b)(6) deposition notice in another ISN case, Information Systems Networks Corporation v. U.S., Case No. 02-796C. Her designation by DCAA was strange since she had no involvement with the underlying contract and no knowledge regarding the case issues. [11]

Notwithstanding her current role as the hired government witness against ISN, as previously outlined, her own statement of professional qualifications, attached to the Report, reveals the limitation of her experience. Thus, while Erdelsky's professional expertise in conducting audits of incurred costs submissions, including the audit process and procedures, may be helpful if those procedures were at issue, that expertise has no relevance in this case.

[11] ISN was required to file a motion to compel as a result of the lack of preparation which was granted.

**E. Erdelsky's "Methodology"**

Erdelsky reviewed ISN's complaint, the ISN expert report, the Decision, seven audit reports (six of which she prepared) her own audit work papers on certain of the audit reports, and the files that she had put together on certain of the audit issues. She did not meet with any witness; did not consult any independent documents or publications; and apparently did not meet with either counsel for defendant or counsel for the Defense Contract Management Agency ("DCMA"). She did not sign a retainer agreement with the defendant and did not produce any time records. It is unknown how she devoted her time (it appears she spent about 40 hours on preparing the Report).

The Report does not provide any opinion analysis or factual conclusions. She admits that she is not in a position to make any legal conclusions or to even comment on the application of the FAR to the specific cost issues.

**LEGAL ARGUMENT**

**A. The Applicable Standard**

Even in a matter that may be decided by a bench trial, this Court must still make a preliminary determination on the relevance and reliability of expert testimony prior to its admission.[12] Seaboard Lumber Co. v. United States, 308 F.3d 1283, 1302 (Fed. Cir. 2002). The Supreme Court has characterized the trial court's function as that of a "gatekeeper" in determining whether an expert's testimony constitutes "scientific knowledge" that will assist the trier of fact to understand or determine a fact in issue. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592 (1993). A judge performs this function by ensuring that an expert's testimony is relevant and reliable. Id. 597. A trial court must exclude expert testimony that is irrelevant or does not result

[12] Expert testimony is subject to exclusion under F.R.Evid. 403 on the grounds of unfair prejudice, confusion or waste of time. Haynes v. American Motors Corp., 691 F.2d 1268 (8th Cir. 1982) (expert's testimony excluded as being cumulative).

from the application of reliable methodologies or theories to the facts of the case. Id. 589-92. The Supreme Court has further extended the principles of Daubert to all experts possessing "technical" and other "specialized" knowledge. Kumho Tire Co., Ltd v. Carmichael, 526 U.S. 137 (1999).

The inquiry as to admissibility is "a flexible one" recognizing that the analysis will depend on the nature of the issue, the witness's expertise, and the subject of the testimony. Kumho Tire, 526 U.S. at 150. [13] The Court must decide at the outset whether a witness is qualified to testify, pursuant to F.R.Evid. 104(a), and the starting point for determining the qualifications of an expert is F.R.Evid. 702.

In response to Daubert and Kumho Tire, F.R.Evid. 702 was amended (2000) to now provide that an expert witness with "scientific, technical, or other specialized knowledge" may testify in the form of an opinion "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." F.R.Evid. 702. Where an expert lacks the qualifications for an issue in the litigation, then his opinion on that issue is not admissible. Zlotolow v. United States, 35 Fed. Cl. 133(1966). This Rule imposes limits on admissibility intended to advance the trier of fact's search for the truth. Thus, the testimony must relate to "specialized knowledge that will assist the trier of fact." The "knowledge" requirement suggests the following:

1. The expert testimony must be based on a "body of known facts or [on] any body of ideas inferred from such facts or accepted as truth on good grounds." Daubert at 589.

[13] In Kumho Tire, the proposed expert for the defendant had worked 12 years at Michelin Tire Co., checking whether tires were defective. Despite this experience, he was disqualified because there was no evidence that others in his industry performed the same analysis as he performed. Here, there is no evidence that Erdelsky's audit decisions were consistent with other audits devised on the same issue.

2. The testimony cannot be based on "subjective belief" or "speculation."

3. The testimony must be pertinent to the facts in issue and not irrelevant or misleading.

4. The testimony must contribute something to the conclusions of the trier of fact, which it could not itself supply.

5. The witness must be qualified to testify as an expert.

F.R.Evid. 702 demands more than just what is required by the relevance rules. U.S. v. Downing, 753 F.2d 1224, 1235 (3rd Cir. 1985). This Rule requires exclusion of expert testimony unless the court concludes that expert testimony on balance will help the trier of fact to accurately "determine a fact in issue." Even where expert testimony will assist, Rule 702 merely states that it "may" be admitted, suggesting there is still power to exclude. See, Horsham v. A.H. Robins Co., 734 F.2d 676, 685 (11th Cir. 1984). "The relevant inquiry regarding admission or exclusion of expert evidence is whether such testimony will aid the jury in resolving issues. If such testimony will assist the jury, it may be offered into evidence. As both Salem and Rule 702 make clear, there is no rule requiring expert testimony on certain issues." (citing Salem v. United States Lines Co., 370 U.S. 31 82 S. St. 1119, (1962)).

Further, courts are generally hostile to expert opinions on legal issues with which a trial judge might be expected to be familiar. For example, expert testimony was excluded on the following issues: a) Whether arrest of plaintiff comported with standards under the Fourth Amendment. Peterson v. City of Plymouth, 60 F.3d 469 (8th Cir. 1995); b) Whether worker's reliance on job application form was reasonable. Aguilar v. International Longshoremen's Union, 966 F.2d 443 (9th Cir. 1992);

c) Whether an insurance company had a duty under a contract to hire tax counsel. Montgomery v. Aetna Casualty and Surety Co., 898 F.2d 1537 (11th Cir. 1990); d) Whether the railway was negligent in causing an accident. Andrews v. Metro North Commuter Railroad Co., 882 F.2d 705 (2nd Cir. 1989); e) Whether plaintiffs were entitled to retirement benefits under a collective bargaining agreement. Apponi v. Sunshine Biscuits, Inc., 809 F.2d 1210 (6th Cir. 1987); f) Whether contract language which required no special expertise to interpret was the proper subject of expert testimony. U.S. v. Race, 632 F.2d 1114 (4th Cir. 1980); g) Whether expert testimony consisting of legal conclusions regarding existence of contract or meaning of its terms was admissible. Marx & Co. v. Diners' Club, Inc., 550 F.2d 505 (2nd Cir. 1977), cert. denied, 98 S. Ct. 188, 434 U.S. 861 (1977).

Here, as will be shown, Erdelsky's expert testimony consists of her disagreements with ISN's expert. Those disagreements are nothing more than what she did as an auditor for DCAA regarding the cost issues in this case. She does not have any special expertise to elaborate on the cost issues or to interpret the FAR. United States v. Bilzerian, 926 F.2d 1285, 1294-95 (2d Cir. 1991), cert. denied, 112 S.Ct. 63, 116 L.Ed 2d 39 (1991) ("[United States v. Scop., 846 F.2d 135 (2nd Cir. 1988) and Marx & Co., v. Diners Club, Inc., 550 F.2d 505 (2d Cir. 1977)] establish that although an expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on these facts."

Some circuits have strongly admonished against the attitude of trial judges to "let it all in." See, In re: Air Crash Disaster at New Orleans, LA. 795 F.2d 1230, 1233-34 (5th Cir. 1986).

> Basic policy questions that effect the very nature of a trial
> lie behind decisions to receive expert testimony

> ...experts not only explain evidence, but can provide it. These two roles, though related, are quite distinct...[In] deciding whether evidence should be allowed from this source (the expert), [o]ur message to our able trial colleagues: It is time to take hold of expert testimony in federal trials.

As Erdelsky's "memorandum" states, the principal focus is to state that the opinions of the ISN expert are not correct. To that extent, Erdelsky's opinions actually rely on the conclusions of ISN's expert. An expert is not permitted to testify to the conclusion reached by another expert. Mike's Train House, Inc., v. Lionel, L.L.C., 472 F.3d 398 (6th Cir. 2006) (misappropriation of trade secrets). "Other circuits have squarely rejected any argument that Rule 703 extends so far as to allow an expert to testify about the conclusion of other experts."

## B. ERDELSKY IS NOT QUALIFIED TO PROVIDE AN EXPERT OPINION IN THIS MATTER

Erdelsky is severely lacking in any qualifications indicating "scientific, technical or other specialized knowledge" that would be of assistance to the Court. The overall issues in this case are the allowability of certain indirect costs. Erdelsky's career has been devoted to auditor services regarding incurred cost audits, not the accumulation of specialized, independent knowledge on indirect cost issues under the FAR. The fact that she has never actually been qualified to testify as an expert is all the more telling given the fact that she has now manufactured adversarial conclusions solely intended to support her prior audit positions.

The only educational background Erdelsky offers is as a CPA. Federal trial courts have not been reluctant in recent years to exclude the testimony of experts with much greater experience and training than Erdelsky in their scientific field. See, Cacciola v. Selco Balers, Inc., 127 F. Supp. 2d 175, 180-81 (E.D.N.Y. 2001) (witness with doctorate

in mechanical engineering was not an expert when he had no professional experience working with the product at issue, and had never been qualified in any court despite his frequent work as an expert consultant to litigants); Sittig v. Louisville Ladder Group, LLC, 136 F. Supp. 2d 610, 615-16 (W.D. La. 2001) (mechanical engineer and biochemical engineer could not testify to alleged defect in ladder because neither had taught any courses, served on any standards committee, or worked for a ladder manufacturer); Krueger v. Johnson & Johnson Professionals, Inc., 160 F. Supp. 2d 1026, 1031 (S.D. Iowa 2001) (witness with 42 years of experience as a professional engineer and metallurgist was not qualified to testify as an expert because he had no experience with the design of the product at issue); Virginia Vermicultie, Ltd. v. W.R. Grace & Co., 98 F. Supp. 2d 729 (W.D. Va 2000) (geological engineer who served as advisor to energy companies was not qualified to testify in antitrust suit between two vermiculite mining companies because he lacked sufficient education and training in economics and anti-trust matters, and had authored no papers on the topics relevant to the litigations). [14]

These recent cases reveal how lacking Erdelsky is in professional experience in the application of FAR to the indirect costs which are the subject of this case. Even in her chosen field as a CPA, Erdelsky has not taught any courses or authored any published works and has not lectured. Her total lack of qualifications on FAR-indirect costs do not meet the high standards of this Court or its predecessor. See, Johnson v. United States, 11 Cl. Ct. 17 (1986) (expert who had authored several books, articles and annual reports, had taught at Harvard Business School, and had testified in previous engagements both for and against the government, entitled to far greater deference than inexperienced counterpart).

---

[14] There is no dispute that Erdelsky is qualified as a DCAA auditor and has experience with the audit function. But that is not an issue in this case.

Erdelsky has spent her career working on audits. Her expertise is in auditing. She is neither an expert in the FAR nor an expert in indirect cost analysis. While she may have developed a skill in audits that is useful for the DCAA, her qualifications in the FAR are not sufficient for this Court's purposes.

Finally, the use of the former auditor whose very decisions are at issue in this case as the expert, assuming *arguendo,* Erdelsky had the necessary credentials to testify in the specific area which is the subject of the case, in and of itself is misplaced. The claim of ISN is that it is entitled to all the reimbursements previously disallowed by Erdelsky. If there is one specialty involved here, it is that of understanding the credibility of the bases used by Erdelsky to disallow the costs in the first place.

ISN's expert on the other hand, has served as a government contractor consultant and specialized in the FAR (having served as a Senior Auditor for four years for DCAA); has been admitted to numerous GAO Protective Orders, as an expert by two federal courts (including this Court); and published many writings on government contract cost issues.

The distinction between a CPA-Auditor and a CPA-FAR expert is not simply a distinction without a difference as the defendant would like the Court to believe in engaging its expert. The specific field of an expert's expertise is directly relevant to whether he is qualified or not to testify. In some cases, a witness has failed to qualify as an expert because only knowledge specifically concerning local standards is pertinent, while the witness just has knowledge of more general standards prevailing in another location. See, e.g. U.S. v. Hirschberg, 988 Fed. 2d 1509 (7th Cir. 1993) cert. denied, 114 S. Ct. 311, 510 U.S. 918, 126 L.Ed 258 (in prosecution for mail fraud, trial court did not abuse its discretion in precluding an Illinois police detective from testifying as to

procedures of auto-theft detectives because the witness had no knowledge of police practices in Miami, where conduct in question occurred); Taylor v. Ouachita Parish School Board, 648 F.2d 959 (5th Cir. 1981) (in school-desegregation action, trial court did not abuse its discretion in precluding expert from testifying where witness had studied residential segregation in many cities but was unaware of local conditions); Koch v. Gorilla, 552 Fed. 2d 1130 (6th Cir. 1977) (in medical-malpractice action governed by state law which required application of local standards of practice, trial court did not commit error in excluding testimony of physician from neighboring community in a different state).

Even where a witness has special knowledge or experience, qualification to testify as an expert also requires that the area of the witness's competence matches the subject matter of the witness's testimony. Thus, despite the fact that Erdelsky may have limited experience on the incurred costs in this case, in order to perform any meaningful analysis of this case, she must have specialized knowledge on the indirect cost subjects in terms of providing any meaningful assistance to this Court. [15]

## C. ERDELSKY'S TESTIMONY MUST BE EXCLUDED BECAUSE HER PRIOR DECISION MAKING AND SELECTIVE USE OF DOCUMENTS MAKES IT UNRELIABLE

Erdelsky's testimony is not reliable because she has carefully selected the materials to review in order to tailor her report to support defendant's positions in this litigation. This Court has observed, "[a]n expert should not be an advocate." Eastern Mineral Int'l Inc. v. United States, 621 Fed. Cl. 621 (1997) (holding that Government's experts were not persuasive because they "clearly were designed to mesh with the government's legal theories" and refused to "acknowledge [the receipt of] input from

[15] Pursuant to R.C.F.C. 26(a)(2), Erdelsky's "memorandum" is a complete statement of all the opinions she will express. She can only testify on what is in the Report.

counsel in reaching [the] conclusions"). "The expert witness, testifying under oath, is expected to give his own honest, independent opinion. Even at the time of his deposition, he remains autonomous. He is not the sponsoring party's agent at any time merely because he is retained as its expert witness." Glendale Federal Bank, FSB v. United States, 39 F.2d. 422 (1977).

Expert opinion that is carefully tailored to support a position is not reliable and must be excluded. See, Minasian v. Standard Chartered Bank, 109 F.3d 1212, 1216 (7th Cir. 1997). See also, Comer v. American Electric Power, 63 F. Supp. 2d 927, 935 (N.D. Ind. 1999) (expert who patterned testimony to support legal theory was excluded). Allowing an opinion about the objective reliability of certain records to be influenced by the subjective statements of an interested party does not comport with the standards of an objective expert. More importantly, federal courts exclude witnesses who have collaborated with other experts. See, Ninth Ave. Remedial Group v. Allis-Chalmers Corp., 141 F. Supp.2d 957, 959 (N.D. Ind. 2001) (testimony of expert whose report was based on contributions of other experts retained by the same party to the lawsuit is unreliable).

In this case, it could not be any more clear that Erdelsky has not arrived at any independent opinions but rather simply taken the audit positions advocated by her over the years and summarized them in the form of an expert "memorandum" refuting the opinions of ISN's expert. The motive for this is to advance the defendant's theory of the case and its continued opposition to ISN's reimbursement of the claimed indirect costs. In fact, Erdelsky admits that she has not reviewed any materials other than the audit reports, her files on the audit reports including her work papers (as well as the complaint and Decision). Clearly, Erdelsky has relied on her own work product generated while she

was an auditor at DCAA for the preparation of the Report. This type of collusion (between her role as an auditor and that of an expert) is impermissible, and it eviscerates any pretence of the expert's impartiality.

Worst yet, Erdelsky makes no attempt to refute or demonstrate why ISN's positions are invalid and why the court should accept hers.

**D. ERDELSKY'S REPORT IS INADMISSIBLE BECAUSE HER OFFERED OPINIONS ARE IRRELEVANT**

Evidence must not only be reliable, it must be relevant to an issue in the litigation. Daubert, 509 U.S. 589-91 (discussing "fit" requirement as to relevance). Erdelsky's testimony is irrelevant to this Court for two main reasons: First, Erdelsky has merely summarized her prior audit decisions and utilized them in creating the Report. Second, Erdelsky has ignored the impact and purpose of the FAR which is most relevant to any analysis of the application of the FAR to the indirect cost rate issues.

1. Erdelsky offers nothing more than a summary of easily-discerned language and her subjective audit determinations.

The Federal Circuits have held that experts should not be permitted to testify on matters that either the fact-finder can determine without expert assistance or constitute legal conclusions. See, Vitronics Corp. v. Conceptionic, Inc., 90 F.3d 1576, 1584 (1966) (where documents are unambiguous, expert testimony regarding their meaning is not admissible). An expert's testimony "must assist the jury in understanding what otherwise might be outside its grasp. Expert testimony may not be used merely to repeat or summarize what the jury independently has the ability to understand. In particular, expert testimony must be allowed to cross-over the line of helpfulness and to invade the quintessential jury function of determining the credibility of witnesses." Lipson, 46 F. Supp.2d 758, 763 (N.D. Ill. 1998) (citing De Jager Construction, Inc. v. Scheininger, 938

F. Supp. 446, 449 (W.D. Mich. 1996)). See also, King v. McKillop, 112 F. Supp. 2d 1214, 1222 (D. Colo. 2000) (Expert testimony is inappropriate when "an untrained layman would be qualified to determine intelligently and to the best possible degree without enlightenment from those having a specialized understanding of the subject involved in the dispute.").

In this case, Erdelsky has merely summarized the audit documents. She has not set forth any basis for her opinions other than what she thought or created since 1993. Any fact finder can perform this function without the assistance of "expert" testimony. Anyone can read the audit reports and determine what DCAA decided. Since Erdelsky is simply rubber-stamping her opinions, she is not qualified to make a determination on the "real substance" of the issues. But a mere recitation of the historical facts, coupled with an advertisement as to her own credibility, is not a proper function of an expert. Erdelsky's testimony to that effect is therefore irrelevant.

2. Erdelsky's testimony is irrelevant because it ignores the fact that it is her own judgment and conduct she is justifying.

"An expert opinion is no better that the soundness of the reasons supporting it." Perreira v. Department of Health and Human Svcs., 33 F.3d 1361, 1366 (Fed. Cir. 1999) (rejecting testimony of expert, which was not supported by studies in relevant discipline). See also, Libas, Ltd., v. United States, 193 F.3d 1361, 1366 (Fed. Cir. 1999) ("[E]ven less weight should be accorded to expert testimony the reliability of which is controverted by the evidence in the record."). A trial court need not hear testimony from an expert when the expert's opinion is based on facts not substantiated by the factual record in the case. See, Burns v. Secretary of DHHS, 3 F.3d 415 (D.C. Cir. 1993). Expert opinions are "meaningless" if premised "on subjective assumptions lacking underlying support in the record..." Edison Intern'l Inc. v. United States, 10 Cl. Ct. 287 (1986).

All of the issues which are the subject of this case have been fully explored between the parties in one context or another, i.e. audit exit conferences, meetings with DCAA involving the issues, exchange of accounting data. All of these documents will in fact ultimately be part of the record of this case. And yet, Erdelsky makes no reference to one document provided by ISN. To the contrary, she has adopted her own audit findings as if they were the law of the case. Therefore she concludes that no discussion of ISN's factual presentation is warranted. An expert opinion can only be valuable if it comes to grips with all of the evidence in the case.

**E. ERDELSKY'S TESTIMONY SHOULD BE EXCLUDED BECAUSE DEFENDANT HAS FAILED TO PRODUCE RELEVANT EVIDENCE**

Under R.C.F.C. 37, a party can be sanctioned for destroying or failing to disclose information required by R.C.F.C 26 (a) or 26 (e)(1). See, Milsapv v. McDonald Douglas Corp., 162 F. Supp. 1262, 1308-09 (N.D. Okla. 2001) (entering judgment for plaintiff due to defendant's destruction of documents). The Court may entertain a wide range of discovery sanctions when presented with the spoliation or failure to produce evidence. Id. The Court may punish a party whose expert has destroyed relevant evidence or failed to produce such evidence by excluding that witness, or by drawing inferences regarding the expert's testimony. See, Trigon Ins. Co. v. United States, 234 F. Supp. 2d. 592, 594 N.1 (E.D. Va. 2002; see generally, Trigon Ins. Co. v. United States, 204 F.R.D. 277 (E.D. Va 2001).

In this case, Erdelsky did not believe she was qualified to serve as an expert. Rather then discuss it with counsel of record, she sought the advice of DCAA. The DCAA deputy general counsel apparently opined in three emails that she could serve as an expert. None of the emails were provided. They were withheld on the basis of

attorney - client privilege and work product. But because the emails go directly to Erdelsky's role as an expert – and her engagement – she was required to produce them just like any other email sent to an expert about his role.

The withholding of these emails is improper under R.C.F.C 26 and is sanctionable pursuant to R.C.F.C 37. Erdelsky's conduct alone may be understandable because she has never served as an expert witness and does not know the extent of her obligations. However, defendant's conduct is inexplicable when reviewed in light of its collusion with the DCAA. It is even more curious that defendant failed to produce emails which apparently provided the basis of Erdelsky's engagement in the first place. Given the serious questions regarding Erdelsky's independence and reliability, she should not be allowed to benefit from a practice that defendant must know is improper. In light of the circumstances, defendant should be sanctioned with the exclusion of Erdelsky's testimony.

## F. ISN IS ENTITLED TO A PROTECTIVE ORDER PURSUANT TO F.R.Civ. P.26(c)

In addition to the exclusion of Erdelsky, ISN seeks a protective order preventing any other witness from testifying about Erdelsky's expert report or any opinion expressed in the Report. While ISN recognizes that frequently issues over an expert's qualifications or opinions go to the weight to be given the evidence by the trier of fact-not to the admissibility-ISN firmly believes that it is in the interests of the parties and the Court that a decision on Erdelsky be made now since otherwise, the identical issues will only further occupy the Court's time at either the dispositive motion stage and at trial. Even if the Court finds that Erdelsky's expert opinions are somehow relevant, her lack of qualifications nevertheless rule her out as

an expert and her opinions should not be articulated by another witness who has used her work product. [16]

## CONCLUSION

For the reasons set forth above, ISN respectfully requests that the Motion be granted and that Ellen E. Erdelsky be excluded from testifying in this matter.

Respectfully submitted,

June_____, 2008

SINGER & ASSOCIATES

By:/s/Norman H. Singer

NORMAN H. SINGER, ESQUIRE
Singer & Associates, P.C.
10411 Motor City Drive
Suite 725
Bethesda, MD 20817
Telephone: (240) 395-2343
Facsimile: (301) 469-0403

Attorneys for Plaintiff

[16] This argument is facially unnecessary since the time for designating experts has long expired and defendant cannot name a substitute expert at this time.

**CERTIFICATE OF SERVICE**

I hereby certify that on this ___ day of June 2008, a copy of the foregoing Plaintiff's Motion for Protective Order and *In Limine* to Prevent the Testimony of Defendant's Proposed Expert, Ellen E. Erdelsky, was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/Norman H. Singer
NORMAN H. SINGER, ESQ