APPENDIX TO

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO AMEND COMPLAINT

# INDEX TO APPENDIX

Contract Disputes Act Claim Under 19 Contracts, Dec. 14, 2004. . . . . . . . . . . . . . . . . . . . . . . . . 1

Final Decision in Response to the Fifth of Seven Claims Asserted by ISN in its Certified Claim dated December 14, 2004, Feb. 9, 2005.. . . . . . . . . . . . . . . . . . . . . . . 8

EXHIBIT

A

# SINGER & ASSOCIATES

*A Professional Corporation*

ATTORNEYS AT LAW
10411 MOTOR CITY DRIVE
SUITE 725
BETHESDA, MD 28017

TELEPHONE: (301) 469-0400
FASCIMILE: (301) 469-0403
EMAIL: NSINGER@ISNCORP.COM

VIRGINIA OFFICE
810A BULLS NECK ROAD
SUITE ONE
MCLEAN, VA 22102

December 14, 2004

**VIA FEDERAL EXPRESS**

Mr. John Svensson
Administrative Contracting Officer
Defense Contract Management Agency Maryland
217 East Redwood Street, Suite 1800
Baltimore, Maryland 21202-5299

Re: Contract Disputes Act Claim Under 19 Contracts

Dear Mr. Svensson:

As Counsel to Information Systems and Networks Corporation ("ISN"), and
pursuant to Federal Acquisition Regulations ("FAR") § 52.233-1 and the Contracts
Disputes Act of 1978, 41 U.S.C.§ 601 et. seq. as amended ("CDA"), ISN respectfully
submits the following certified claim for various contract entitlements under the 19
contracts set forth on Exhibit A attached to this certified claim and incorporated herein by
specific reference. (The 19 contracts will be hereinafter referred to as "the Contracts.")
The claims, as hereinafter described, consist of (i) damages for the Government's breach
of contract for failure to pay invoiced amounts within the Contracts' ceilings, (ii)
damages for breach of contract for costs incurred by ISN above the Contracts' ceilings,
(iii) loss of profit damages from withheld follow-on contracts not awarded ISN due to the
various breaches of contract by the Government, (iv) for unabsorbed overhead damages
on the loss by ISN of follow-on contracts, (v) damages connected with final resolution of
all outstanding contractual issues to establish final rates, (vi) for Prompt Payment Act and
appropriate CDA interest, and (vii) for reasonable attorneys fees incurred by ISN under
the Equal Access to Justice Act.

## I. Historical Background

On June 27, 2002, ISN submitted to the Defense Contract Management Agency ("DCMA"), a certified CDA claim relevant to 23 different contracts. The letter was received by the DCMA Administrative Contracting Officer ("ACO") or "Contracting Officer" on or about July 1, 2002. ISN's certified CDA claim set forth six claims: (1) a claim for "adjusted indirect cost rates" concerning five categories of indirect cost; (2) a claim for unpaid fees on 17 of the contracts; (3) a claim for "retentions on invoices" on 9

SINGER & ASSOCIATES

*A Professional Corporation*



of the contracts; (4) a claim for " all contract cost below ceilings less previous payments"; (5) a request "to increase the contract cost limitation" on 22 contracts; (6) a claim for " wrongful withholdings." The total amount demanded for all claims was in excess of $5.8 million.

During the period June-September, 2002, the ACO and ISN engaged in discussions regarding the claims set forth in the certified CDA claim including, inter alia, issues regarding the indirect cost rate portion of ISN's claim. On October 25, 2002, ISN's, Chief Financial Officer submitted a letter withdrawing ISN's certified CDA claim. This letter was received by the ACO. Subsequently, ISN provided additional information to the ACO in an effort to resolve certain issues set forth in the withdrawn certified CDA claim, On December 8, 2002, the ACO stated that the June 27, 2002 CDA claim "had been officially withdrawn" and he would not consider any further documentation regarding ISN's claims, because the claims were no longer certified in accordance with Section 33.207 of the FAR.

On March 25, 2004, ISN filed a complaint against the Government in the United States Court of Federal Claims. Information Systems Networks, Corporation v. United States, No. 04-481C (Judge Miller). A copy of the Complaint is attached as Exhibit E and incorporated herein by reference. ISN predicated the Complaint on the June 27, 2002 certified CDA claim because the Contracting Officer had not issued a final decision or notified ISN when a final decision would be expected to be issued; therefore, ISN claimed that jurisdiction was appropriate in the United States Court of Federal Claims. At the time of the filing of the Complaint, ISN was not aware of the withdrawal of the certified CDA claim by its Chief Financial Officer, as heretofore set forth. Thereafter, the Government filed a motion to dismiss claiming, inter alia, that the Court lacked jurisdiction to entertain the Complaint because ISN had failed to submit a CDA claim or obtain a final decision prior to the filing of its Complaint with the Court. After appropriate investigation, ISN determined that the Government's position was substantially correct regarding jurisdiction, and dismissed the case without prejudice so as to enable it to file the appropriate certified CDA claim.

## II. The Claims

This is a consolidated CDA claim that combines various claims arising out of 19 separate contracts between ISN and the Government. By way of background, ISN, like other contractors, was required within 90 days after expiration of its fiscal year to submit to the cognizant Contracting Officer as well as to the audit agency an incurred cost submission for final overhead rates based upon actual incurred costs. A final overhead rate is generally computed as a percentage or dollar factor that expresses the ratios of

Singer & Associates
*A Professional Corporation*



indirect expenses incurred in the period to direct labor, total cost input, or some other appropriate base of the same. Final overhead rates are necessary to determine the cost incurred under cost reimbursement type contracts as well as incentive and fixed -price redeterminable type contracts. Final overhead rates also apply to any other contracts that require settlement of indirect cost prior to establishing a final contract price.

ISN submitted such proposals in a timely manner but the Government refused to settle certain issues concerning ISN's costs then obstructed agreements on final overhead rates. In fact, with the exception of fiscal year 1996 and 1997, ISN's indirect cost rates have not been settled for 17 years (for FY 1985-1995, 1998-2003.)

This CDA claim asserts amounts owed by the Government to ISN under 19 reimbursement contracts. A list of the 19 contracts has been attached to this CDA claim as Exhibit A and incorporated by reference as if fully and specifically set forth herein. The amounts were compiled with data from the Defense Contract Audit Agency ("DCAA") Audit Reports, DCAA Forms 1's, Indirect Rate Cost Submissions and the records of ISN. ISN's indirect cost rates that were used to calculate the costs claimed by ISN herein comply with the requirements of the FAR. The claims asserted herein are unrelated to any claim previously or currently filed by ISN with DCMA or any other judicial or administrative proceeding.

Attached as Exhibit B and C are Schedules that set forth the amounts owed ISN on each of the Contracts. The claims hereinafter asserted are for the payment of each amount owed under each of the Contracts. The Government has failed to resolve outstanding contractual issues with ISN and pay these amounts. Such failures constitute a breach of contract under each of the Contracts. Each of the amounts claimed should have been paid within a reasonable time, but were not, thereby entitling ISN to Prompt Payment Act interest. At all times ISN has attempted, in good faith, to resolve the five indirect cost rate issues (i.e. cost of ownership, cost of bonuses, cost of pension, cost of ownership equipment rentals, and corporate and B&P allocations). The Government failed to agree upon final indirect rates, which would have allowed ISN to timely invoice contract fees, retainages, and final costs incurred. The Government failed to issue required Form 1's regarding the five issues in dispute in the settlement of final indirect rates in a timely manner. The result of this conduct caused the rates to remain open thereby preventing ISN from billing and closing out the contracts, which are the subject of this claim. As a result, any applicable statute of limitations was tolled by conduct of the Government. Attached, as Exhibit D is a schedule of the issuance of the Form 1's.

Regarding ISN's claim for breach of contract for failure of the Government to pay invoiced amounts within contract ceilings, the total owed on 17 of the 19 contracts for

unpaid fees is at least $490,000 dollars. Total amounts due ISN for costs incurred within contract ceilings including retainages totals at least $2.2 million dollars. (See Schedules B&C)

Regarding ISN's claim for breach of contract for costs incurred above contract ceilings, ISN has incurred costs above contract ceilings in the sum of at least $2.5 million dollars. (See Schedules B&C)

Regarding ISN's claim for loss of profit from withheld follow-on contracts, ISN asserts that at least five of the 19 contracts contained option or follow-ons, which the Government did not exercise in favor of ISN because ISN did not have final indirect rates. The follow-on contract for Contract No. F19628-82-C0108 was not awarded to ISN. As a result, ISN lost profit of at least $1million dollars on the follow-on portion of this contract. ISN was not awarded the follow-on to Contract No. MDA903-84-C-022. As a result, ISN lost at least $1 million dollars in profit on the follow-on portion of this contract. ISN was not awarded the follow-on to Contract No. F19628-85-C-0035. As a result, ISN lost at least $250,000 dollars in profit on the follow-on portion of this contract. ISN was not awarded the follow-on to Contract No. 5C-Y-EIR-0028. As a result, ISN lost at least $1million dollars in profit on the follow on portion of this contract. ISN was not awarded the follow-on to Contract No. DTFA01-85-Y-01018. As a result, ISN lost profit of at least $1million dollars on follow-on portion of this contract.

Regarding ISN's claim for unabsorbed overhead on the loss of the follow-on contracts, ISN claims that the follow-on contracts would have absorbed a certain amount of ISN's overhead in the performance of the contracts. As a result of the loss of the follow-on contracts and the revenue therein estimated to exceed $20million dollars, such revenue would have absorbed a certain portion of ISN's G&A overhead. As a result of the loss of revenue, the unabsorbed overhead was required to be absorbed by other ISN contracts, thereby reducing the profit margin of such contracts to ISN's detriment. ISN claims a loss in excess of $1million dollars on its unabsorbed overhead due to the loss of the follow-on contracts.

Regarding ISN's claim for final determination of all outstanding contractual issues to establish final rates, ISN claims that it has provided documentation to the ACO resolving the issues of cost of ownership, cost of bonuses, cost of pension, cost of ownership-equipment rental, and corporate and B&P cost allocation. Therefore, ISN is entitled to the issuance of final rate approvals for FY 1985-1996.

Regarding ISN's claim to Prompt Payment Act and CDA interest, ISN has invoiced the Government for amounts within contract ceilings which the Government has

SINGER & ASSOCIATES

*A Professional Corporation*



failed to pay as well as for amounts incurred above contract ceiling due to the conduct of the Government. Such invoices were properly submitted to the cognizant agency and contained, or were accompanied by, substantiating documentation. The Government failed to pay, and or withheld payment on the ISN invoices. All of the Invoices submitted by ISN to the Government applied to contracts for the procurement of property or services entered into for the benefit of the Government. Accordingly, the failure of the Government to pay the invoices in accordance with the law, obligates the Government to pay ISN interest penalties pursuant to 31 U.S.C.§ 3907 for a period of one year after the invoice was due to be paid by the Government, and an additional penalty thereafter until the filing of ISN'S CDA claim. ISN is also entitled to CDA interest on the amounts set forth in this CDA claim beginning as of the date this claim is filed with the ACO.

Regarding ISN's claim to its reasonable attorney's fees and expenses incurred in this proceeding, ISN claims that either the Government's position will be found not to be "substantially justified," or alternatively, will establish a substantial benefit for other contractors who have not had final rates decided by the Government in a reasonable and timely fashion. Accordingly, ISN is entitled to the recovery of its reasonable attorneys fees and expenses, which will be subsequently incurred if this CDA claim is not paid.

III. <u>ISN's Specific Claim Amounts</u>

1. For unpaid contract fee and amounts due within contract ceilings including retainages in an amount not less than $2.6 million dollars;
2. For ISN's cost over contract ceilings in an amount no less than $2.5 million dollars
3. For ISN's loss of profit in amount no less than $5 million dollars;
4. For loss of unabsorbed overhead in an amount no less than $1 million dollars;
5. <u>For the resolution of the five indirect rate issues to conclusively establish final rates for ISN for the period FY 1985-1996;</u>
6. For appropriate Prompt Payment Act and CDA interest.
7. For reasonable attorney's fee's.

IV. <u>Conclusion</u>

ISN is requesting, that as the cognizant Contract Officer, you issue a decision in writing or otherwise furnish a copy of the decision to ISN, care of the undersigned. The decision shall state the reasons for the decision reached by you, and shall inform ISN of its rights as provided under the CDA and any applicable regulation under the FAR. Specific findings of fact are not required, but if made, shall not be binding in any subsequent proceeding.

SINGER & ASSOCIATES

*A Professional Corporation*

Mr. John Svensson
December 14, 2004
Page Six

V. Claim Certification

See attached.

Very Sincerely Yours,

Norman H. Singer, Esq.

Attachment
NHS/nnb

Claim Certification

I, Roma Malkani, President & CEO of Information Systems& Networks Corporation ("ISN") hereby provides the following Certification as required by 41 U.S.C.§ 605 (c)(1)(1994):

1. I am authorized the representative of ISN; I am familiar with ISN's books and records of account and with each of the 19 contracts that are the subjects of this CDA claim and listed in Exhibit A to the claim.

2. I hereby certify that ISN's claims as set forth in its Counsel's letter to which this Claim Certification is attached, and as detailed on Exhibit B&C and explained in Exhibit D are made in good faith, that ISN's supporting data are accurate and complete to the best of my knowledge and belief to support the various claims; that the amounts requested accurately reflect ISN's entitlement to the amounts set forth; that the Government is liable to ISN for the amounts as set forth.

3. I hereby certify that none of the amounts claimed in the attached CDA claim consist of claims previously asserted by ISN except in Case No. 04-481C; none of these claims were covered or could have been covered by any payment made by the Government to ISN.

4. These claims are being asserted within six years after such claims first came to the attention of ISN when such claims therefore first accrued. Thus, the claims comply with 28 U.S.C.§ 2501.

5. The facts set forth in ISN's Counsel's letter to which this Certification is attached are based on the investigation of ISN and the results of the investigation.

6. I am duly authorized to certify the claims on behalf of ISN.

Under the Penalty of Perjury
Dated: December 14, 2004

Roma Malkani
Roma Malkani
President & CEO

EXHIBIT

B

# DEFENSE CONTRACT MANAGEMENT AGENCY
## DEFENSE CONTRACT MANAGEMENT AGENCY MARYLAND
217 EAST REDWOOD STREET, SUITE 1800
BALTIMORE, MARYLAND 21202-5299

DCMAE-GTOK

February 9, 2005

Norman H. Singer, Esq.
Singer & Associates
10411 Motor City Drive, Suite 725
Bethesda, MD 28017

SUBJECT: Final Decision in Response to the Fifth of Seven Claims Asserted by ISN in its Certified Claim dated December 14, 2004

Dear Mr. Singer::

On December 21, 2004, I received a certified claim from you on behalf of ISN dated December 14, 2004. In the claim letter, ISN asserts seven specific claims. This is my final decision on the fifth claim. Insofar as the remaining six claims are under my cognizance, I will issue a final decision on those claims no later than May 13, 2005.

The fifth claim requests resolution of five issues, 'cost of ownership, cost of bonuses, cost of pension, cost of ownership-equipment rental, and corporate and B&P cost allocation'. Based upon the resolution of these issues, ISN requests "final rate approvals" for Fiscal Years 1985-1996.

I am unable to establish final G&A rates for FY 1985-1995 until litigation of the state income tax element of the rates has been concluded by the Department of Justice.

The G&A rate for 1996 was established by means of a DCAA rate letter dated October 17, 2001, which ISN accepted on September 3, 2002.

With the exception of G&A rates, all indirect cost rates for ISN's Fiscal Years 1985 and 1986 were settled by means of an Indirect Cost Rate Agreement signed by ISN on January 29, 1998 and by its Administrative Contracting Officer (ACO) on March 3, 1998.

In this final decision, I will determine all final rates other than G&A, and establish interim G&A rates that may be used by ISN for interim billings pending the conclusion of the state income tax litigation.

**DEFENSE CONTRACT MANAGEMENT AGENCY**
**DEFENSE CONTRACT MANAGEMENT AGENCY MARYLAND**
**217 EAST REDWOOD STREET, SUITE 1800**
**BALTIMORE, MARYLAND 21202-5299**

I make the following findings concerning the disputed cost issues affecting ISN's indirect cost rates for Fiscal Years 1987-1995:

**1. Cost of Ownership- Building:** I find that DCAA developed a reasonable method to determine the cost of ownership of the space rented by the contractor from an organization under common control, and properly compared that amount to the cost of the lease.

Applying the cost of ownership calculation to each of the years in question yields the following allowable costs:

| Fiscal Year | Rental Cost | Ownership Cost | Costs Allowed |
|---|---|---|---|
| 1987 | $990,505 | $1,245,958 | $990,505 |
| 1988 | $1,298,478 | $1,036,102 | $1,036,102 |
| 1989 | $1,107,337 | $1,061,947 | $1,061,947 |
| 1990 | $1,307,841 | $1,262,053 | $1,262,053 |
| 1991 | $1,348,157 | $1,152,383 | $1,152,383 |
| 1992 | $1,449,695 | $1,020,550 | $1,020,550 |
| 1993 | $943,153 | $954,744 | $943,153 |
| 1994 | $1,050,198 | $865,997 | $865,997 |
| 1995 | $1,083,207 | $879,754 | $879,754 |

**2. Cost of Bonuses:** DCAA questioned the costs of bonuses included by ISN in its final indirect cost proposals for FYs 1992, 1994 and 1995 because the auditors were unable to match the accrued costs with payments made. Subsequent to the audit and DCAA's issuance of Forms 1, ISN provided information supporting the payment of these costs. Therefore, I allow the bonus costs previously questioned by DCAA:

| Fiscal Year | Costs Claimed | Costs Allowed |
|---|---|---|
| 1992 | $330,344 | $330,344 |
| 1994 | $205,363 | $205,363 |
| 1995 | $186,500 | $186,500 |

**3. Cost of Pensions:** DCAA questioned certain pension plan payment costs included by ISN in its incurred cost proposals for fiscal years 1992, 1993, 1994 and 1995 because ISN did not make payments 'by the time set for filing of the Federal income tax return or any extension' as required by FAR 31.205-6(j)(1)(i).

**DEFENSE CONTRACT MANAGEMENT AGENCY**
**DEFENSE CONTRACT MANAGEMENT AGENCY MARYLAND**
**217 EAST REDWOOD STREET, SUITE 1800**
**BALTIMORE, MARYLAND 21202-5299**

**Fiscal Year 1992**: ISN made pension contributions in October 1993, and no tax filing extension was obtained. Therefore, I disallow these costs under FAR 31.205-6(j).

**Fiscal Year 1993:** ISN received a tax filing extension through October 1, 1994 and made its pension contributions in September 1994. Therefore, I conclude that ISN complied with FAR 31.205-6(j) for this year, and allow the costs.

**Fiscal Year 1994**: ISN received a tax filing extension through October 1, 1995 and made its pension contributions in September 1995. Therefore, I conclude that ISN complied with FAR 31.205-6(j) for this year, and allow the costs.

**Fiscal Year 1995**: ISN has provided no evidence that it made its pension contributions within the time set for filing its Federal income tax return – September 30, 1996 – or any extension thereof. Therefore, I disallow these costs.

| Fiscal Year | Costs Claimed | Costs Allowed |
|---|---|---|
| 1992 | $285,495 | $0 |
| 1993 | $294,535 | $294,535 |
| 1994 | $298,921 | $298,921 |
| 1995 | $456,228 | $0 |

**4. Cost of Ownership- Equipment Rental**: DCAA questioned costs incurred by ISN in Fiscal Years 1988-1991 for the rental of certain IT equipment used to run the ISN corporate accounting system. The equipment was rented from Shel Nar, a leasing firm wholly owned and operated by the sole owner of ISN. The relevant cost principle is FAR 31.205-36, Rental Costs, which states that charges in the nature of rent for property between any organizations under common control are only allowable to the extent that they do not exceed the normal costs of ownership. The only exception to this limitation applies when the entity leasing to the contractor has an established practice of leasing the same or similar property to unaffiliated lessees.

I find that ISN and Shel Nar are organizations under common control. I further find that during the years FY 1988-1991, Shel Nar did not have an established practice of leasing the same or similar property to unaffiliated lessees.

ISN has failed to provide sufficient information to permit me to determine the cost of ownership for this equipment. Based on information that was provided, I have determined that a profit rate of 'at least 35%' was customary for Shel Nar. Using

DEFENSE CONTRACT MANAGEMENT AGENCY
DEFENSE CONTRACT MANAGEMENT AGENCY MARYLAND
217 EAST REDWOOD STREET, SUITE 1800
BALTIMORE, MARYLAND 21202-5299

this figure, I hereby disallow 35% of the lease costs paid by ISN to Shel Nar, and allow 65% of the costs:

| Fiscal Year | Costs Claimed | Costs Allowed |
|---|---|---|
| 1987 | $101,346 | $65,875 |
| 1988 | $94,000 | $61,100 |
| 1989 | $161,200 | $104,780 |
| 1990 | $62,200 | $40,430 |
| 1991 | $45,400 | $29,510 |

**5. B&P and Corporate Cost Allocation:**

**B&P Allocation:**
For Fiscal Years 1988-1991, a previous ACO approved ISN's practice of allocating B&P expenses using its overhead base rather than its G&A base. Commencing in FY 1992, ISN returned to the practice of allocating its B&P expenses using its G&A base. In light of the previous ACO's approval of the earlier practice, I will not question it. Furthermore, I consider the subsequent practice of allocating B&P expenses by means of the G&A base to be appropriate. Therefore, I accept ISN's allocation of B&P costs for FY 1988-1995.

**Corporate Cost Allocation:**
Beginning with FY 1988, ISN proposed to group a portion of G&A expenses into an intermediate pool, and allocate these pooled expenses to its various overhead pools. The DCAA auditors concluded that this accounting method violated FAR 31.203, Indirect Costs. However, a previous ACO approved this method for FY 1988-1991. I agree with the DCAA auditors. Although I will allow this accounting method to be used for FY 1988-1991 in light of the prior approval of the ACO, I have reallocated these costs to ISN's G&A pool for Fiscal Years 1992-1995:

| Fiscal Year | Total Overheads | General & Admin |
|---|---|---|
| 1988 | $768,734 | |
| 1989 | $833,714 | |
| 1990 | $928,922 | |
| 1991 | $833,144 | |
| 1992 | | $406,606 |
| 1993 | | $653,022 |
| 1994 | | $838,013 |
| 1995 | | $581,694 |

**DEFENSE CONTRACT MANAGEMENT AGENCY**
**DEFENSE CONTRACT MANAGEMENT AGENCY MARYLAND**
**217 EAST REDWOOD STREET, SUITE 1800**
**BALTIMORE, MARYLAND 21202-5299**

**Multiple Small Items:** Various miscellaneous costs included in ISN's incurred cost proposals for FY 1988 and FYs 1992-1994 were disapproved by DCAA in Forms 1 issued to ISN on April 24, 2000 and June 19, 2001. Although ISN has never disputed these disapprovals, I will address these costs in order to avoid any confusion over their allowability:

**FY 1988 - Notice No. 88-5**: DCAA disapproved $33,458 in costs. I agree with the auditors, and hereby disallow these costs.

**FY 1992 - Notice No. 2000-13 (revised)**: DCAA disapproved $15,015 in costs. I agree with the auditors, and hereby disallow these costs.

**FY 1993 -- Notice No. 2000-14 (revised)**: DCAA disapproved $957 in costs. I agree with the auditors, and hereby disallow these costs.

**FY 1994 -- Notice No. 2000-15 (revised)**: DCAA disapproved $4,257 in costs. I agree with the auditors, and hereby disallow these costs.

**Final Fringe and Overhead Rates:**

Based upon the disallowances discussed above, I hereby determine the final fringe and overhead rates for Fiscal Years 1987-1995:

**Fringe Benefits & Overhead Rates**

| Rate Names | 1987 | 1988 | 1989 | 1990 | 1991 | 1992 | 1993 | 1994 | 1995 |
|---|---|---|---|---|---|---|---|---|---|
| **Fringe** | **34.00%** | **33.13%** | **30.31%** | **27.67%** | **30.29%** | **29.17%** | **27.51%** | **25.84%** | **24.51%** |
| Proposed | 33.50% | 33.54% | 30.55% | 27.93% | 29.01% | 31.04% | 27.37% | 28.18% | 29.80% |
| **Overheads** | | | | | | | | | |
| **Washington A** | **45.80%** | **58.74%** | **87.97%** | **63.38%** | **57.92%** | **28.66%** | **32.60%** | **34.86%** | **34.57%** |
| Proposed | 46.20% | 61.71% | 84.88% | 63.37% | 68.49% | 35.71% | 35.07% | 36.82% | 42.18% |
| **Washington B** | **36.70%** | **38.28%** | **60.20%** | **41.28%** | **36.67%** | **17.36%** | **24.21%** | **22.79%** | **26.21%** |
| Proposed | 36.80% | 41.70% | 60.64% | 49.53% | 50.56% | 22.70% | 29.12% | 28.25% | 25.96% |
| **Washington D** | | **38.28%** | **60.20%** | **41.28%** | **36.67%** | | | | |
| Proposed | | 41.70% | 59.42% | 49.53% | 50.56% | | | | |
| **N. Carolina A** | **44.40%** | **60.15%** | **59.73%** | **56.77%** | **49.08%** | **26.55%** | **42.65%** | **27.15%** | **27.38%** |
| Proposed | 46.00% | 60.72% | 59.81% | 58.3% | 62.33% | 30.54% | 48.94% | 55.20% | 57.89% |

**DEFENSE CONTRACT MANAGEMENT AGENCY**
**DEFENSE CONTRACT MANAGEMENT AGENCY MARYLAND**
**217 EAST REDWOOD STREET, SUITE 1800**
**BALTIMORE, MARYLAND 21202-5299**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **N. Carolina B** | | | | | **39.53%** | **21.64%** | **37.92%** | **23.46%** | |
| Proposed | | | | | 37.38% | 25.93% | 44.40% | 47.20% | |
| **Alabama** | | **20.12%** | **51.37%** | | | | | | |
| Proposed | | 20.21% | 0.00% | | | | | | |
| **ISN Services** | | **17.82%** | **24.53%** | **22.47%** | **20.46%** | **15.54%** | **10.62%** | **15.79%** | |
| Proposed | | 11.35% | 17.82% | 15.76% | 16.23% | 20.07% | 15.63% | 21.24% | |
| **Newport A** | | **111.51%** | **70.03%** | **64.23%** | **52.50%** | **36.42%** | | | |
| Proposed | | 112.00% | 102.27% | 72.48% | 59.97% | 40.26% | | | |
| **Newport B** | | **53.00%** | **51.97%** | **55.47%** | **43.62%** | **28.59%** | | | |
| Proposed | | 53.56% | 47.63% | 53.67% | 51.00% | 32.41% | | | |
| **San Antonio A** | | | | **63.47%** | | | **25.88%** | | |
| Proposed | | | | 64.45% | | | 31.28% | | |
| **FAA** | | | | | | | **9.40%** | **4.17%** | **2.09%** |
| Proposed | | | | | | | 14.75% | 13.92% | 5.37% |
| **Boston A** | **50.20%** | | | | | | | | |
| Proposed | 50.30% | | | | | | | | |
| **NASA TUNS** | **20.00%** | 20.00% Proposed | | | | | | | |

**Note:**

Overhead names with a letter A or without any letter indicate a contractor site. Overhead names with the letters B or D indicate a client site.

These rates are applicable to all Government flexibly prices contracts and subcontracts for Fiscal Years 1987-1995.

This determination of indirect rates does not change any cost or rate ceiling, or any specific allowance or disallowance established by the terms and conditions of any contracts to which these rates apply. This determination does not constitute an obligation of funds. Recovery of costs pursuant to this determination shall be subject to the Limitation of Cost, Limitation of Funds, and Limitation of Government Liability clauses contained in the individual contracts to which this determination applies. In the event that the terms of this rate

**DEFENSE CONTRACT MANAGEMENT AGENCY**
**DEFENSE CONTRACT MANAGEMENT AGENCY MARYLAND**
**217 EAST REDWOOD STREET, SUITE 1800**
**BALTIMORE, MARYLAND 21202-5299**

determination conflict with the terms of any Government contracts to which this determination applies, the terms of the contracts shall take precedence.

Based upon the disallowances discussed above, I hereby establish revised interim G&A rates for Fiscal Years 1985-1995. This interim rate does not include the state income tax costs that are currently the subject of litigation.

**General & Administrative Rates Summary**

| Rate Name | 1987 | 1988 | 1989 | 1990 | 1991 | 1992 | 1993 | 1994 | 1995 |
|---|---|---|---|---|---|---|---|---|---|
| **G&A** | 16.82% | 9.28% | 8.78% | 9.47% | 8.95% | 13.65% | 19.27% | 12.83% | 10.65% |

This is the final decision of the Contracting Officer. You may appeal the decision to the Armed Services Board of Contract Appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the Armed Services Board of Contract Appeals and provide a copy to the Administrative Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the Armed Services Board of Contract Appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

JOHN H. SVENSSON
Administrative Contracting Officer

cc: File/GTOK
DCAA Silver Spring Branch Office, Germantown, MD
DCMAE-GTG